Mr. Justice FIELD,
 

 after stating the facts of the case, delivered the opinion of the court, as follows:
 

 The record does not disclose what disposition was made of the demurrer to the complaint, but as an answer was subsequently filed upon which the parties proceeded to a hearing, the presumption is that it was .abandoned.
 

 By the organic act of the Territory, the District Courts are invented with chancery and common-law jurisdiction. The Javo jurisdictions are exercisfed by the same court, and,, under-the legislation of the Territory, the modes of procedure up to the trial or hearing are the same whether a legal'or equitable remedy is sought. The suitor, whatever relief he may ask, is required to state “in ordinary and concise lan
 
 *680
 
 guage” the- facts-of his case upon which he invokes the judgment of the court. But the consideration which the •court will give to the questions raised by the pleadings, when the case is called for trial or hearing,^whether it will subrhit them to a jury, or pass upon them without any such intervention, .must depeud upon fhe jurisdiction which is to be exercised ' If the remedy sought be a legal one, a jury is essential unless waived by the stipulation of the parties; but if the remedy sought be equitable, the court is, not bound to call a'jury, and if it does calPone, it is only for the purpose of enlightening its conscience, and not to control its judgment. The decree which it must render upon the law and the facts'must proceed from its own judgment respecting them, and not. from the judgment of others. Sometimes in the same action both legal and equitable relief may be sought, as for example, where -damages ai’e claimed for a past diversion of water, and an injunction prayed against its diversion in the future. Upon the question of damages, a jury would be required; but upon the propriety of an injunction, the action of the court alone could be invoked. The formal distinctions in the pleadings and modes of procedure are abolished; but the essential distinction between' law and equity is not changed. The relief which the law affords must still be administered through the intervention, of a jury, unless a jury be waived; the'relief which equity affords must still be applied by the court itself, and all information presented to guide its action, whethér obtained through masters’ reports or findings of a jury, is merely advisory. Ordinarily, where there has been an examination before a jury of a disputed fact, and a special finding made, the court will follow it. But whether it does so or not must depend upon the question whether it is satisfied with the verdict. This discretion to disregard the findings of the jury may undoubtedly be qualified by statute;'but we do not find anything in the statute of Montana, regulating proceedings in civil cases, which affects this discretion. That statute is substantially a copy of the statute of California as it existed in 1851, and it was frequently held by the Supreme
 
 *681
 
 Court of that State, that the provision in that act requiring issues of fact to be tried by a jury, unless a jury was waived by the parties, did not require the court below to regard'as conclusive the findings of a jury in an. equity case, even .though no application to vacate the 'findings was made by the parties, if in its judgment they were not supported by' the evidence. That court only held that the findings, when not objected to in the court beloiv and the judge was satisfied with them, could not be questioned for the first time . on. appeal.
 
 *
 

 The question on the merits in this ease is whether a right to-running waters on the public lands Of the, United States for purposes of irrigation can be acquired by prior appro.priation, as against parties not having the title of the government. Neithér party has any title from the United States; no question as to the rights of riparian proprietors can therefore arise. It will he time enough to consider those fights when either of the parties has obtained the patent of the government.' At present, both parties stand upon the same footing; neither can allege'that the other is a. trespasser against the government without at the same time in-validating his own claim.
 

 In the late case of
 
 Atchison
 
 v. Peterson,
 
 †
 
 we had occasion to consider the respective rights of miners to funning waters on the mineral lands of the public'domain;, and we there; held that by the custom which had obtaiued among miners in the Pacific States and Territories, the party who first subjected tfie water to ,use, of took the necessary steps for .that purpose, was regarded, except as against the government^ as thé source of title in all controversies.respecting it; that the doctrines of the common law declaratory óf the rights of riparian proprietors were inapplicable, or applicable only to a limited extent, to the necessities of miners, and were inadequate to their protection; that-the equality of right
 
 *682
 
 recognized by that law among all the proprietors upon the samé stream,-would have beeu incompatible with any' extended diversion of the water by one proprietor, and its conveyance for mining purposes to points from which it could ,not be restored to the stream; that the government by its ■silent acquiescence had-assented to and encouraged the occupation of the public lands for mining; and that he who first connected his labor with property thus situated and open to general exploration, did in natural justice acquire a better fight to its use and enjoyment than others who had not,-given such labor; that the minefs on the public lands thr'oughoulj the Pacific States and Territories, by their customs, usages, and regulations,' had recognized the inherent justice of this'principle, and the principle itself was at an early period recognized by legislation and enforced by the courts-in those States and Territories, and was finally approved by the legislation- of Congress in Í866.. The views there-expressed and the rulings, made ai;e equally applicable to-the'use of water on the public lands for purposes of irrigation. No distinction is made in those'States and Territories by.the custom of miners or settlers, or by the courts, in the fights of the first appropr-iator from the use made of 'the water, if thé use be a beneficial One.
 

 In .the case of
 
 Tartar
 
 v.
 
 The Spring Creek Water and Mining Codipany,
 
 décided in 1855, the Supreme Court of California said: “Tble current of decisions of this court go to establish that-'the policy of this State, as. derived from her legislation, is'to -permit settlers in all capacities to occupy the public lands, and by such occupation to acquire the right of undisturbed enjoyment against all the world but the true owner. In evidence of, this, acts' have been passed to pro- ' tect the possession of agricultural lands' acquired by mere occupancy; to license miners ¿ to'provide for the recovery of paining élaims; recognizing canals and ditches which were known to'divert .the water of streams from their natural.channels for mining purposes; and others of like character. This.polic'y has been extended equally to all pursuits, and no partiality for one over another has been evincéd, ex
 
 *683
 
 cept in the single case where the rights of the agriculturist are made to yield to those of the miner where gold is discovered in his land. . . . The policy of the*exception is obvious. Without it the entire gold region might have been inclosed in large tracts, under the pretence of agriculture and grazing, and eventually what would have sufficed as a rich bounty to many thousands would be reduced to the proprietorship of a few. Aside from this the legislation and ¿cisiona have been uniform in awarding the right of peaceable enjoyment to the first occupant, either of the land or of anything incident to the land.”
 
 *
 

 Ever since that decision it has been held generally throughout the Pacific States and Territories that the right to water by prior appropriation for any beneficial purpose is ehtitled to. protection. Water is diverted to propel machinery in flour-mills and saw-mills, and to irrigate land for' cultivation, as well as to enable miners to work their mining claims; and'in all such cases the right of the first appropriator, exercised within reasonable limits, is respected and enforced. We say within reasonable limits, for this right to wate,r;4ike the right by prior occupancy to mining ground or agricultural land, is not unrestricted. It must be exercised with reference to the general condition of the country and the necessities of the people, and not so as to deprive 4 whole neighborhood or community of its use and vest an absolute monopoly in a single individual. The act of Congress~bf 1866 recognizes the right "to water by prior appropriation for agricultural and manufacturing purposes, as well as for mining. Its language is: “ That whenever by priority of possession rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and .decisions of courts, the possessors* afid owners of such vested rights shall be maintained aud/protected in the same.”
 

 It is very evident that Congress intended, although the lan
 
 *684
 
 guage used is not happy, to recognize as valid the customary law with respect to the use of-water which had grown up among the-occupants of the public land under the peculiar necessities of their
 
 condition}
 
 and that law may be shown by evidence of the local qustofris, or. by the legislation of the State or Territory, or the decisions of the courts. . The union of .the three conditions in any particular case-is not' essential to the perfection of the right by priority; and in case of. conflict between a local custom and'a statutory regulation, the' lafter, as of superior authority, must necessarily control.
 

 ' .This la\y was in force when the plaintiffs in this case acquired their right'to the waters of Avalanche Creek. There was also in force an act.of the Territory, passed on the 12th. of January, 186.5,.to protect and regulate the irrigation of land, which declared in its first section that all persons who Claimed or held a possessory right or title to any laud within the Territory on the bank, margin, or neighborhood of any stream of water, should be'“ entitled to the use of the water of said stream for the purpose of irrigation and making said claim available to the full extent of the soil for agricultural purposes.” Another section provided that in cáse the volume of water in the stream was not -sufficient to supply the continual wants'of the entire country, through which it passed, an apportionment of the water should be made between different localities by commissioners appointed for that purpose. This-last section has nó application to the present case, for-it is not pretended that there was not' water enough in the district, where Avalanche Creek flows, to supply- the . wants of the • country; ^.and, the section itself was repéaled in 1870.
 
 *
 

 • In January ,of that year another act was passed by the legislature of Montana upon the same subject, which recognizes thé right by prior appropriation of- water for the purposes of irrigation, and declares that all controversies respecting the rights to water under its provisions, shall be
 
 *685
 
 determined by the date of the appropriation as respectively made by the parties, and that the water of the streams shall be made available to their full extent for irrigating purposes, without regard to deterioration in quality or diminution-in quantity, “so that the.same do not-materially affect or impair the rights of the prior appropriator; but in no .case' shall the same'be diverted or turned from the ditches or canals of such appropriator so as to render the same quavailable.”
 
 *
 

 Several decisions of the Supreme Court of Montana, have been cited to us recognizing the right by prior appropriation to water for purposes of mining- on the public lands of the United States, and- there' is no solid reason' for upholding the rightwheu the water is thus used, which does not apply with the same forcé when the water is sought on those lands for any other equally beneficial purpose. In
 
 Thorp
 
 v.
 
 Freed
 
 thé subject was very ably discussed by two of the justices of that court, who differed in opinion upon the questiqn in that case, where both parties had acquired the title of the government. The disagreement would seem to have arisen in the application of the doctrine.to a ease where title had, passed from the government, and not in its application to a case where neither party had acquired .that title. In-the course of his opinion Mr. .Justice Knowles stated that.ever since the settlement of the Territory it'had been the custom of those who, had -settled themáelves upon'the public domain and devoted any part thereof to the purposes óf agricultur to dig ditches and'turn out the water of. some stream’to in gate the same; that this right had been^enerally recognize by the people of the Terri torj;, and
 
 hdjM been universally cor ceded as a necessity of agricultural pursuits.
 
 “ So universal,' added the justice, “has been this usage that I do not slip-pose there has béon a parcel of -land, to the exteut of one aeré, cultivatéd'withiii the bounds of this Territory, that has not' been irrigated by water .diverted from some running stream.”
 
 ‡
 

 
 *686
 
 We are satisfied that the right claimed by the plaintiffs is one which, under the customs, laws, and decisions of the courts of the Territory, and the act of Congress, should be' recognized and protected.
 

 Decree affirmed.-
 

 *
 

 Still
 
 v.
 
 Saunders, 8 California, 287; Goode v. Smith, 13 Id. 81; Duff
 
 v
 
 Fisher, 15 Id. 376. See, also, Koppikus
 
 v.
 
 State Capitol Commissioners, 16 Id. 248; and Weber
 
 v.
 
 Marshall, 19 Id. 447.
 

 †
 

 Supra,
 
 p. 507.
 

 *
 

 Per Heydenfeldt, J., 5 California, 397.
 

 *
 

 Session Laws of 1866, 367.
 

 *
 

 Session Laws, of 1870, 57.
 

 ‡
 

 † 1 Montana, 652, 665.