[Civil No. 237. Filed May 25, 1888.]

[S. C. 18 Pac. 276.]

CHARLES DYKE, Plaintiff and Appellant, v. P. V. CALDWELL, Defendant and Respondent.

1. IRRIGATION—NOTICE OF APPROPRIATION—EVIDENCE—EFFECT OF—REASONABLE TIME FOR COMPLETION OF WORK—EVIDENCE OF INTENT TO APPROPRIATE.—While mere posting of notice of appropriation, unaccompanied by work, is insufficient to constitute an appropriation, yet it tends to show that, in accordance therewith, the work was done. Where one has done no work, but has taken all the preliminary steps for the construction of his ditch, he should have a reasonable time therefor. The building of a house on land worthless without water is evidence of intent to appropriate.
REV. ST. U. S. 1878, § 2339, REV. ST. ARIZ. 1887, par. 3201, CITED.

APPEAL from a Judgment of the District Court of the First Judicial District in and for the County of Pima. Wm. H. Barnes, Judge. Modified.

The facts are stated in the opinion.

Hereford & Lovell, for Appellants.

Ben Goodrich, for Respondent.

PORTER, J.—On the 9th of January, 1886, respondent (defendant in district court) filed his declaratory statement for pre-emption of a quarter section of land, which land "straddles" the San Pedro river; a part of the land lying on either bank of the river. During the dry seasons the water does not flow in the river, and is confined to pools in the bed of the river, and which pools are upon the respondent's pre-emption claim, upon which he entered on the 8th day of January, 1886. On the 30th day of November, 1885, appellant (plaintiff in district court) filed his declaratory statement for pre-emption of another quarter section, further down the river from respondent's, upon which he had gone to settle on the 26th day of November, 1885. Respondent testifies, upon going on the land, he went to the San Pedro river to see if he could find a place where he could get water, and convey it on the land for irrigation, as no crop could be raised on the land without irrigation. "On examination, he found the pools mentioned in plaintiff's complaint; and, at the point just below, the bed of the river was so filled with rock, gravel, and sand as to form a dam across the river of sufficient height to enable him to convey the water onto the land during the seasons of high water; and when the water of the river was sufficiently high to flow over the dam. That the dam appeared to be very strong, and was evidently the cause of the lower pool;" and that there was no other place where a ditch could be constructed so as to convey the flowing water onto his land, and which could only be done when there was a regular flow of water in the river. That immediately he commenced building his house, which he completed in February, 1886. That on the 12th day of December, 1885, he went to the dam at the lower pool, accompanied by Thomas Gardiner, and located the right and claim to take the water flowing from that point, by means of a ditch. That, assisted by Gardiner, he commenced constructing the ditch at the lower end of the pool, and dug a ditch in the sand in the bed of the river, from 15 to 20 feet in length, and from 15 to 20 inches deep below the surface of the water in the pool. That they dug it as deep as they could, and did no more

work on it till the latter part of February, 1886. That they turned the water into it, and posted a notice at the head of the ditch, where it could be plainly seen by any one passing along the river in that vicinity, and which notice was afterwards recorded. Appellant further testified that, as soon as he located his water-right, he prepared the instruments, and commenced to survey the line of his ditch; that, while not working on his house, he was clearing out the timber and underbrush in line with his ditch on his own land, until the injunction was served upon him; that a part of the line of the survey was upon an old ditch which had been constructed by parties unknown, years before, and that it did not require any excavation,—it being only necessary to remove or burn the brush and logs from it; that he had cleared it all off, and had excavated and completed about 150 feet of new ditch before he was enjoined; that he told plaintiff he was going to take the water that would flow over the dams; that, since the commencement of this suit, a flood had washed away the top of the dam, at least two feet below his ditch; and that he would have to raise the dam to its former height, which would raise the water in the pools two feet higher. Thomas Gardiner testified to posting notice, and location by the first digging and survey of the line of ditch, and the carrying away the top of the dam; that the survey was commenced in December, 1885, and completed in January, 1886. The respondent testified that he took his land up for a stock ranch; that the land was not suitable for agriculture without irrigation, and was only valuable on account of the water for stock; that in the dry season there was no other place for the stock to get water except in the pools on his land; that their drainage would make his place valueless; that, on account of the elevation of his land, the water could not be brought upon it to irrigate for agricultural purposes. The only conflict in the evidence is the testimony of respondent, who says "that at the time he went on the land, and made his entry in the land-office, in January, 1886, there was no indication of any work on the ditch, and no ditch; and that he had no notice of defendant's claim. At the time the suit

was brought, defendant was working on the ditch on plaintiff's land.'' The district court finds "that, during the dry seasons of the year, the waters of the San Pedro river cease to flow in its bed for some distance, both above and below said pools; that defendant, in February, 1886, commenced the construction of a ditch, for the purpose of conveying the water from said pools, situate on plaintiff's said land, to lands of his own, lower down the river; * * * that if defendant is permitted to construct said ditch, and carry away, by means thereof, the water from said pools on plaintiff's lands, the value of said lands will be greatly lessened and damaged.''

We cannot see that the findings are supported by the evidence. Though the posting of a notice, unaccompanied by appropriation of the water by work, is not sufficient, yet it tends to show that, in accordance therewith, the work was done. There is no conflict as to the survey and the clearing away the brush, and logs along the line of the old and abandoned ditch. A very short time had elapsed from settling on the land by appellant before he was enjoined. If appellant had done no work, but had taken all the preliminary steps for the construction of his ditch, he should have reasonable time therefor. He knew the land was worthless without water, and that it could not be obtained except from the pools. His building his house alone gave evidence of his purpose. In *Basey* v. *Gallagher*, 20 Wall. 670, the court say: "In the late case of *Atchison* v. *Peterson*, 20 Wall. 507, we had occasion to consider the respective rights of miners to running waters on the mineral lands of the public domain, and we there held that, by the custom which had obtained among miners in the Pacific states and territories, the party who first subjected the water to use, or took the necessary steps for that purpose, was regarded, except as against the government, as the source of title in all controversies respecting it. * * * The views there expressed, and the rulings made, are equally applicable to the use of water on the public lands for the purposes of irrigation. No distinction is made in those states and territories, by the customs of miners or

by the courts, in the rights of the first appropriator, from the use made of the water, if the use be a beneficial one." The act of congrees of July 26, 1866, enacts, (paragraph 9:) "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed." The law of this territory is: "All the inhabitants of this territory who own or possess arable and irrigable lands shall have the right to construct public or private *acequias*, and obtain the necessary water for the same, from any convenient river, creek, or stream of running water." (Rev. St. par. 3201.) We cannot see how the value of respondent's land will be greatly lessened and damaged; the testimony on part of respondent being "that there was no feed for stock on the land described in the complaint, but the stock ranged back on the hills, and came to the pools for water;" that the testimony is "that, if the pools were drained, it would destroy its value for stock-raising." But the declared purpose of appellant is to use the water flowing over the dam; that he could not avail himself of the water unless it passed over the dam. There is no proof that irreparable injury would be done to respondent. It was not shown that the ditch would drain the pools, and no damage could arise unless they were drained.

The judgment is so modified as to allow the appellant to heighten the dam at the lower pool, and so construct his ditch that the water which flows over the dam shall pass into his ditch; and the injunction is so modified. Appellant must, however, be restrained from draining the pools.

Wright, C. J., and Barnes, J., concur.