## KRALL v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1897.)

### No. 320.

WATERS AND WATER COURSES ON PUBLIC LANDS—APPROPRIATION BY MINERS, ETC.—GOVERNMENT RESERVATIONS.

Miners and others, in the region where the artificial use of water is an absolute necessity, have the right, though not riparian proprietors, to appropriate for mining, irrigation, etc., the waters of nonnavigable streams flowing through the public lands, so far as not already appropriated by others; and the previous establishment of a government reservation below the point of appropriation does not affect the right, except so far as the waters of the stream have been previously appropriated for the use of such reservation. Gilbert, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Idaho.

Silas W. Moody, for appellant.

Jas. H. Forney, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The decision of the court below was in large measure based upon the idea that the government, as the sovereign power, has, in respect to the waters of nonnavigable streams upon the public lands, a superior right to any which citizens can acquire. "Save such Indian title to the public lands

as it chooses to recognize," said the court below in its opinion, "it has such absolute title to·them and the waters therein that it may do with them as it will, including their withdrawal from all claim or appropriation by the citizen, when not already granted or conveyed." That the government, in the exercise of its sovereign power, may condemn for its uses the private property of the citizen, no one will deny; but we cannot at all agree that it can withdraw or take, without compensation, any right to the waters of a stream upon the public lands acquired by the citizen under its laws or by its sanction. By the ninth section of the act of July 26, 1866, congress provided that:

"Whenever by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed." 14 Stat. 253.

But prior to the enactment of this statute it was the established doctrine of the supreme court of the United States—

"That rights of miners who had taken possession of mines and worked and developed them, and the rights of persons who had constructed canals and ditches to be used in mining operations and for purposes of agricultural irrigation, in the region where such artificial use of water was an absolute necessity, are rights which the government had, by its conduct, recognized and encouraged, and was bound to protect, before the passage of the act of 1866."

It was so expressly held in the case of Broder v. Water Co., 101 U. S. 274, 276. And it was in that case further held that the act of July 26, 1866, was "rather a voluntary recognition of a pre-existing right of possession, cónstituting a valid claim to its continued use, than the establishment of a new one." That doctrine of prior appropriation in respect to the waters upon the public lands was in full force when, according to the record in the case at bar, the plaintiff in error went upon the public lands and appropriated, for the purpose of irrigating his own land, a certain amount of the water of Cottonwood creek, there flowing. His appropriation was, of course, subject to the prior appropriation and use of the waters of the stream made by the government officials for the purposes of the military post reservation, which consisted of 640 acres of land, and was located on the stream in question below the point of the appellant's diversion. The military reservation was established by presidential proclamation in January, 1868,—subsequent not only to the time when the government, by its conduct, in recognizing and encouraging the local custom of appropriating the waters of the nonnavigable streams upon the public lands for agricultural and other useful purposes, had become bound to recognize and protect a right so acquired, but subsequent, also, to the passage of the act of congress of July 26, 1866, making statutory recognition of that right, and confirming the holder in its continued use. The creation of the reservation for military post purposes did not destroy or in any way affect the doctrine of appropriation thus established by the government in respect to the waters of the nonnavigable streams

upon the public lands. They continued subject to appropriation for any useful purpose. The appropriation of a part of those waters for the uses of the military post secured it in the use of the portion so appropriated, but it did not take from others the right to make such appropriation above the reservation as would not interfere with its prior appropriation. In Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350, relied on by the court below, the appropriator entered upon the land which the grantor of the plaintiff in that suit had previously entered in the land office, and to which he had acquired a vested right, and took the water there flowing, which the court held was part and parcel of the entryman's land, and which the appropriator could not take. We do not think the supreme court by that case intended to do away with the doctrine of prior appropriation as previously recognized by its decisions and by the statute of July 26, 1866; for in its opinion in Sturr v. Beck it expressly referred to that statute and to the cases of Atchison v. Peterson, 20 Wall. 507, 512, and Broder v. Water Co., 101 U. S. 274, 276, the doctrine of which cases and of Basey v. Gallagher, 20 Wall. 682, in our opinion, requires a reversal of the judgment of the court below. If by the decision in Sturr v. Beck the court had intended to overrule its former decisions, it does not seem to us it would have cited them without disapproval. The judgment is reversed, and the cause remanded for further proceedings in accordance with the views here expressed.

GILBERT, Circuit Judge (dissenting). The appellant and the appellee sustain to one another neither the relation of riparian proprietors nor that of locators of water rights. The appellant is not a riparian owner. He has not acquired title from the United States to any lands adjacent to Cottonwood creek. He has gone upon the public land, and has diverted from the stream, through his ditch, a quantity of water, which he has conveyed thereby to other lands. By this act he could acquire no rights against the United States. What rights he may have acquired as against other appropriators of the waters of the same creek, it is not necessary to consider. The United States have, to a certain extent, recognized the rights to water by appropriation which were conferred under local laws, which rights are in some respect a departure from the doctrine of the common law respecting riparian owners, in cases where such appropriators had no title to the soil, but had applied the waters of streams upon public lands to a useful purpose; and the courts, in construing such laws, have generally decided that the first appropriator might divert water from the stream to any useful purpose, without obligation to return it to the stream. It was for the protection of rights upon the public lands, such as these, that had accrued without claim to the title or entry under the land laws, that the act of 1866, section 9 of which appears in the Revised Statutes as section 2339, was enacted. But there is nothing in the statute, nor in any decision of the courts construing the same, to uphold the doctrine that an appropriator of water upon the public lands of the United States may, by virtue of such

appropriation or the continued use of the water, acquire rights therein adverse to the United States. It needs no citation of authorities to sustain the proposition that, at the time when the land included within the military reservation was set apart by the government for a post, the United States was the sole proprietor of the land, and of the water of Cottonwood creek, which flowed through it. In so setting apart and reserving the land, there was undoubtedly included in the reservation the same right to the waters of the stream which traversed it, and the same right to have the stream flow as it was accustomed to flow, undiminished, that would have been conveyed to any grantee of the government in case of a grant of these lands. The right of such a grantee has been defined by the supreme court in the case of Sturr v. Beck, 133 U. S. 541, 10 Sup. Ct. 350. In that case a homestead entryman had entered lands over which the waters of a creek flowed in its natural channel. Subsequent to his entry, and prior to his conveyance of the homestead to Beck, Sturr went upon the homestead, and located a water right under the laws of Dakota, and constructed a ditch, and diverted the waters of the creek to his own adjacent land. It was contended on behalf of Sturr that the doctrine of the prior appropriation of water on the public land, and its beneficial use, protected him from interference as against the grantee of the homestead entryman; but the court held that the latter obtained a vested right to have the creek flow in its natural channel, by virtue of the homestead entry and his possession thereunder, and that the filing of a homestead entry upon land across which a stream of water runs in its natural channel, before a right or claim has vested in another to divert it therefrom, confers the right to have the stream continue to run in that channel, without diversion. The doctrine of that decision is distinct. It announces the general principles applicable to the diversion of water from a stream upon the public lands after a homestead right has attached below upon the same stream. The fact that the point of diversion was upon the homestead itself was not taken into account. The law is announced irrespective of that fact, and the case is decided as one purely of the invasion of the water rights acquired by the homestead settler, and not as a case of trespass upon the homestead itself. I find nothing in the decision inconsistent with the three prior decisions of the same court which were cited in the opinion with approval. The first of those cases is Atchison v. Peterson, 20 Wall. 507. In that case it was said that on the mineral lands of the public domain the doctrines of the common law concerning the rights of riparian proprietors to the use of running waters are modified, and that "the first appropriator who subjects the property to use, or takes the necessary steps for that purpose, is regarded, as against the government, as the source of title, in all controversies relating to the property"; and the court decided that, in controversies between the first appropriator and parties subsequently claiming the water, the question for determination is whether his use and enjoyment of the water to the extent of his original appropriation has been impaired by the others. In Basey v. Galla-

gher, 20 Wall. 670, the decision goes no further than to hold that in the Pacific states and territories a right to running water on the public lands of the United States for the purpose of irrigation may be acquired by prior appropriation, as against parties not having the title of the government. In the opinion it was said:

"Neither party has any title from the United States. No question as to the right of prior appropriators can therefore arise. It will be time enough to consider those rights when either of the parties has obtained the patent of the government."

The event referred to in this quotation from the opinion did not occur until the case of Sturr v. Beck. In that case the court was called upon to consider the rights of one who had obtained a patent of the government, and I know of no way to explain away the plain import of the decision, however much its doctrine may be opposed to the trend of the decisions of the state courts in the Pacific states. In the third case (Broder v. Water Co., 101 U. S. 274) it was held that a water right and canal upon the public lands, acquired and constructed in 1853, was by the act of July 26, 1866, made paramount to the right of one who thereafter acquired the title to the lands, whether he obtained title by pre-emption, or under the grant to the Central Pacific Railroad Company made on July 2, 1864, in which grant there was confirmed to the owners of such canals a pre-existing right. Recurring to the decision in Sturr v. Beck, it may be said that, if the rights of a grantee from the United States under the public land laws are as there defined, it necessarily follows that the reservation to its own use by the United States of public land which is traversed by a running stream, before any rights have accrued to divert the water from its natural channel, includes the reservation of the water, and the right to have it flow as it was accustomed to flow, and that if the appellant in this case acquired, by his appropriation of the waters from the creek, and the diversion thereof, and the continued use of the same, any right to the water, it is not adverse to the rights of the United States, and cannot affect the right of the government to demand the unrestricted flow of the water through the reservation, as it flowed at the time when it was so set apart for a military post. As against this reservation of property and the incidents thereto, the appellant has acquired no rights whatever. I think the decree, therefore, should be affirmed.