REVENUE MIN. CO. v. BALDERSTON.

(Third Division. Valdez. January 31, 1905.)

No. 102.

1. WATERS AND WATER COURSES—PUBLIC LANDS—APPROPRIATION.

The first appropriator of water on the public domain for purposes of mining is entitled to the exclusive use, of so much thereof as is necessary to carry on his work.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, § 16.]

2. SAME—ACTUAL USE—NECESSITY.

An unreasonable monopoly of the waters upon public lands will not be sustained where the party manifestly undertakes to control the same unfairly to prevent others from using them.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, § 7.]

3. SAME.

A subsequent appropriator of excess or waste waters upon the public domain for purposes of mining must not do so in a manner to injure the first appropriator's property therein or his use thereof.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, § 15.]

4. SAME—STATUTES—WATER RIGHTS.

The organic act of May 17, 1884, c. 53, 23 Stat. 24, and the twenty-sixth section of the amendatory act of June 6, 1900, c. 786, 31 Stat. 330, extended to Alaska "the laws of the United

. States relating to mining claims and the rights incident thereto."
*Held*, that these provisions extended to Alaska so much of the
water act of July 26, 1866, c. 262, 14 Stat. 253; section 2339,
Rev. St. 1878 [U. S. Comp. St. 1901, p. 1437]—as relates to the
appropriation of water on the public domain for mining pur-
poses.

Plaintiff and defendant have submitted an agreed case to
the court for decision and judgment, under the provisions of
chapter 28 of the Code of Civil Procedure (sections 248–250,
p. 195, Carter's Ann. Codes), involving the right of possession
and use of certain described water rights for mining purposes
near Cape Yaktag. The agreed statement of facts is signed
by both plaintiff and defendant and verified by each according
to law.

It is admitted that eight qualified locators therein named in
May, 1902, located seven groups of mining claims of 160 acres
each, and prior to the beginning of this controversy conveyed
all the described claims to the plaintiff. It is also specially
admitted:

"That long prior to the said defendant's entry upon and into the
possession of said premises for mining purposes, as hereinafter
stated, the said locators and their grantees, including the said plain-
tiff, had performed in the location of each of said mining claims and
in holding and maintaining the possession of the same all of the
acts and things required by the laws of the United States, and by
the local rules, regulations, and customs of miners in the mining and
recording district in which said claims were situated necessary to
make valid locations, and hold and maintain the continuous posses-
sion of each of said placer claims as placer mining ground."

It is also admitted that all of said claims are valuable for
mineral, containing placer gold in quantities to pay a reason-
able profit for mining in a large way. It is admitted that plain-
tiff was in possession and had expended more than $25,000 in
improvements and development work on the claims before the
defendant laid claim to any interest therein; that said improve-
ments consist of a pumping plant capable of lifting 2,000 gal-

lons per minute to a height of 25 feet, and ditches and flumes to carry the water for mining purposes; also a steam sawmill to cut lumber and fuel, a tramway, and houses for its business and employés, of whom there are 17.

It is also agreed:

"That the said plaintiff commenced its active mining operations upon its said premises on or about the 22d day of July, 1903, and has ever since and still is pursuing its placer mining operations upon said premises with a large force of men and a large amount of materials."

It appears that the claims in question lie on a flat coastal plain, extending from the low tide line of the Pacific Ocean beach back to a range of mountains parallel with the beach; that two lagoons or ancient river beds lie within the exterior boundaries of the claims, and that streams of water descend from the near-by mountains, and, flowing through the claims, enter these lagoons. It is also agreed: "That but a small portion of said premises can ever be worked as placer mining premises at any profit whatever without the use and employment of large plants of machinery and expensive and extended improvements," and it is admitted that plaintiff has adopted a systematic and well-adapted plan of working such sands by the creation of reservoirs by dams across and in the lagoons, by floating barges therein, and the hoisting of the sands by machinery, and extraction of the gold by the use of the waters of certain of the creeks, ditches, and flumes. And it is agreed:

"That at no time are the waters flowing over said premises sufficient to work said entire mining premises to the extent and upon the plans and purposes of said plaintiff, as above detailed."

It is agreed that on April 24, 1904, the defendant entered upon the premises so claimed by plaintiff, and began to construct ditches to draw off the waters of the lagoon nearest to the ocean beach, with the intention of using it to wash the gravels and sands of the premises in possession of plaintiff, and to extract the gold therefrom, without plaintiff's consent, and

in defiance of its admitted rights; that in the month of April, 1904, a water right was claimed on the north bank of the first lagoon, opposite the point where the defendant entered to work the premises of plaintiff, the water appropriated thereby and the right thereupon conveyed to the defendant, who threatens actually to appropriate and use said water in washing the auriferous sands on plaintiff's premises.

Oliver P. Hubbard, for plaintiff.

John Y. Ostrander, for defendant.

WICKERSHAM, District Judge.   Upon the admitted facts in this case the plaintiff claims the legal right to the exclusive use of the placer mining claims described in the statement, as well as the first and exclusive use of the waters of the lagoons and the creeks which supply and maintain them, by right of prior use and possession.

The defendant claims the right to use said waters and to divert the whole thereof, if necessary, to enable him to mine and extract the gold from the beach gravels both above and below the mean tide line on the ocean beach on the mining locations so admittedly in possession of the plaintiff, and also stoutly argues that he has the right to mine the 60-foot roadway provided for along the beach by the tenth section of "An act extending the homestead laws and providing for right-of-way for railroads in the District of Alaska, and for other purposes," approved May 14, 1898, c. 299, 30 Stat. 413 [U. S. Comp. St. 1901, p. 1469].   Defendant's claim under the roadway clause must be denied, since section 26 of the act of June 6, 1900, c. 786, entitled "An act making further provisions for a civil government for Alaska, and for other purposes" (31 Stat. 330), provides that "the reservation of a roadway sixty feet wide, under the tenth section of the act of May fourteenth, eighteen hundred and ninety eight, entitled 'An act extending the homestead laws and providing for right-of-way for railroads in the

District of Alaska, and for other purposes,' shall not apply to mineral lands or town sites."

Two questions, then, are left for consideration: First, may the defendant mine and extract gold from plaintiff's claims, either above or below mean high tide? And, second, may he appropriate and carry away the water on said claims, and used and necessary to plaintiff's use in mining the same?

The first question must be answered in the negative. The agreed case admits that plaintiff's mining claims were located in accordance with the law and the local rules and regulations; hence it follows that plaintiff has the exclusive right to extract the gold therefrom. It will not be necessary to consider plaintiff's right to mine below the line of mean high tide, since the record shows it is just so much better than defendant's as a prior peaceable and admittedly legal possession can make it.

The second question is rendered less doubtful by the agreed facts in the case. It is admitted that the plaintiff was the prior appropriator of the waters in controversy, and that the whole thereof is reasonably necessary for the working of the claims in question, in accordance with a reasonable and well-devised system involving the floating of barges, and the use of pumps, ditches, and flumes, all of which were either constructed or in process of construction when the defendant entered upon plaintiff's possession and attempted to secure rights therein.

"The laws of the United States relating to mining claims and the rights incident thereto" were extended to and declared to be in full force and effect in Alaska by the eighth section of the act of May 17, 1884, entitled "An act providing a civil government for Alaska" (chapter 53, 23 Stat. 26), and also by the twenty-sixth section of the act of June 6, 1900, entitled "An act making further provision for a civil government for Alaska, and for other purposes" (chapter 786, 31 Stat. 330). These acts extended to Alaska that section of the act of Congress of July 26, 1866, c. 262, 14 Stat. 253, giving prior appropriators

of water flowing across the public lands to be used for mining purposes a qualified title thereto and the exclusive reasonable use thereof. This section is as follows:

"Sec. 2339. Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage." [U. S. Comp. St. 1901, p. 1437.]

This extension by Congress of the United States mining laws and rights incident thereto to Alaska necessarily carried with it those authoritative decisions of the courts construing and declaring their legal effect. The doctrine which has grown up in the mining states and territories on the Pacific coast, and is clearly extended to Alaska by the acts of Congress above quoted, is thus stated by the Supreme Court of the United States by Mr. Justice Field:

"By the custom which has obtained among miners in the Pacific states and territories, where mining for the precious metals is had on the public lands of the United States, the first appropriator of mines, whether in placers, veins, or lodes, or of waters in the streams on such lands for mining purposes, is held to have a better right than others to work the mines or use the waters. The first appropriator who subjects the water to use, or takes the necessary steps for that purpose, is regarded, except as against the government, as the source of title in all controversies relating to the property. As respects the use of water for mining purposes, the doctrines of the common law declaratory of the rights of riparian owners were, at an early day, after the discovery of gold, found to be inapplicable or applicable only in a very limited extent to the necessities of miners, and inadequate to their protection." Atchison v. Peterson, 20 Wall. (U. S.) 507, 22 L. Ed. 414; Basey v. Gallagher, 20 Wall. (U. S.) 670, 22 L. Ed. 452; Jennison v. Kirk, 98 U. S. 453, 25 L. Ed. 240.

It must not be understood, however, that an unreasonable monopoly can be obtained by one who manifestly undertakes to control the waters of public streams unfairly to prevent others having the use thereof; but no such question arises in this case, for in the agreed facts it is admitted" that at no time are the waters flowing over said premises sufficient to work said entire mining premises to the extent and upon the plans and purposes of said plaintiff as above detailed." Nor does a mere prior appropriation and use of waters on the public lands give the user unqualified and exclusive rights therein, except to the reasonable use thereof for his own operations; nor can one who subsequently desires to appropriate the excess or waste do so in a manner to destroy the first appropriator's property. What diminution of quantity or deterioration in quality will constitute an invasion of the rights of the first appropriator will depend upon the special circumstances of each case; and, in controversies between him and parties subsequently claiming the water, the question for determination is whether his use and enjoyment of the water to the extent of the original appropriation have been impaired by the acts of the other parties. Atchison v. Peterson, 20 Wall. (U. S.) 507, 22 L. Ed. 414.

From the admitted facts in this case, it appears that plaintiff's grantors were the first appropriators of the waters in question; that the whole thereof are necessary to the proper and reasonable working of the mines belonging to the plaintiff; that no diminution thereof can be made by defendant without material injury to—possibly, the total destruction of—plaintiff's reasonable and proper plans for working the mines by barges, machinery, flumes, and sluice boxes.

Judgment for plaintiff, who may have such relief, by injunction or otherwise, as will fully protect its accrued and vested prior rights in the premises.