UNITED STATES v. BENNETT et ux.

(Circuit Court of Appeals, Ninth Circuit. August 18, 1913.)

No. 2,200.

1. WATERS AND WATER COURSES (§ 33*)—DIVERSION OF WATER FROM STREAM— SUIT TO ENJOIN WASTE.

The fact that the United States has appropriated all of the unappropriated water of a stream in a county for an irrigation project, as permitted by a law of the state, does not give it standing to maintain a suit to enjoin a prior appropriator from using an excessive amount of water unless it is alleged and proved that it had acquired the right to such water under its own appropriation.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 23–26; Dec. Dig. § 33.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. WATERS AND WATER COURSES (§ 24\*)—DIVERSION OF WATERS FROM STREAM— RIGHTS OF PRIOR APPROPRIATOR.**

Under Rev. St. § 2339 (U. S. Comp. St. 1901, p. 1437), which provides that vested rights to the use of water from a stream on public lands for mining, agricultural, or other purposes, recognized by local laws, shall be maintained and protected, while an appropriator of water may not waste the same he cannot be required to change his system of husbandry or devote his land to other purposes because it would require less water and leave more for subsequent appropriators.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 16; Dec. Dig. § 24.\*]

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit in equity by the United States against W. S. Bennett and Josephine Bennett, his wife. Decree for defendants, and complainant appeals. Affirmed.

Oscar Cain, U. S. Dist. Atty., and E. C. MacDonald, Asst. U. S. Atty., both of Spokane, Wash., and E. W. Burr, Sp. Asst. U. S. Atty., of North Yakima, Wash.

Smith & Gresham, of Conconully, Wash., for appellees.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

MORROW, Circuit Judge. This is an action in equity, brought by the United States in the District Court of the United States for the Eastern District of Washington, to restrain the defendants from diverting from the waters of the Salmon river, in that state, an amount of water in excess of 2½ acre feet per acre for certain lands owned by the defendants and described in the complaint, amounting to 62.82 acres.

The substance of the complaint is that in the year 1905 the complainant, proceeding under the provisions of the Reclamation Act of June 17, 1902, c. 1093, 32 Stat. 388 (U. S. Comp. St. Supp. 1911, p. 662), and the act of the Legislature of the state of Washington of March 4, 1905 (Laws of Washington 1905, p. 180), appropriated all of the unappropriated waters of Salmon river in the county of Okanogan, in the state of Washington, for the Okanogan irrigation project; that the works necessary for the utilization of the water so appropriated have been constructed, and the said waters have been put and devoted to beneficial uses in accordance with law to a large number of persons occupying adjacent land which, without such water, would be valueless and incapable of cultivation; that the amount of water available from all sources of supply for the benefit of the water right applicants in the Okanogan project, during the year 1911, was found to be insufficient, and there was a shortage of water during the latter portion of such irrigating season. The lands of the defendants are described, and it is alleged that the lands described,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

susceptible of irrigation, do not exceed 50 acres; that such lands require not more than 2½ acre feet per acre of water to sufficiently and properly irrigate the same; that the use of a greater amount of water is not only unnecessary but absolutely detrimental to the growing of crops thereon; that, notwithstanding this, the defendants have unnecessarily, wastefully, and uselessly diverted, consumed, and used of and from the waters of the Salmon river about 11 acre feet of water per acre in each season, thereby depriving the plaintiff of water which it could and otherwise would have used for the necessary and beneficial purposes mentioned in the complaint.

[1] The allegation that complainant has appropriated all of the unappropriated water of Salmon river in Okanogan county, and that defendants are diverting an excess of water to their lands in that county from the Salmon river, does not give the complainant the right to complain of the defendants, unless the excess of water so diverted by them was water previously appropriated by the complainant. This is the law and must be the very substance of complainant's cause of action.

The appropriation of the waters of the Salmon river was under section 4 of the act of the Legislature of the state of Washington, approved March 4, 1905 (Laws of Washington 1905, p. 180). That section provides, among other things, that:

"Any authorized officer of the United States, either in the name of the United States or in such name as may be determined by the Secretary of the Interior, may appropriate, in behalf of the United States, so much of the unappropriated waters of the state as may be required for the project, such appropriation to be made, maintained and perfected in the same manner and to the same extent as though such appropriation had been made by a private person, corporation or association."

The cause of action stated in the complaint is the charge that the defendants "have unnecessarily, wastefully, and uselessly diverted, consumed, and used of and from the waters of the said Salmon river about 11 acre feet per acre of water in each season, thereby depriving the plaintiff of water which it could and otherwise would have used for the necessary and beneficial purposes" mentioned in the complaint. It is not charged that the water that is being diverted by the defendants was part of the unappropriated waters of the Salmon river at the time of the passage of the act of the Legislature of March 4, 1905, or at the time of the formation of the Okanogan project under that act and the act of Congress of June 17, 1902; nor is it charged that any part of the water diverted by the defendants was acquired by the complainant by appropriation under the authority of these acts. To maintain this action it must appear upon the face of the complaint that the defendants are diverting water which, under the statutes of the state of Washington and of the United States, had been appropriated by the complainant under the provisions of such statutes.

The law of Washington relating to the appropriation of water for irrigation purposes provides:

"The right to the use of water flowing in any river, stream or ravine of this state for irrigation * * * purposes, * * * may be acquired by

appropriation, and as between appropriations the first in time is the first in right." Section 1. act of the Legislature of the state of Washington, approved March 9, 1891, Laws of Washington 1891, p. 327.

The demand of the complainant is, not that the defendants be wholly restrained from diverting water from Salmon river, but only the quantity in excess of 2½ acre feet per acre in any irrigating season. This demand is in effect an admission that the diversion of that amount of water by the defendants is under a valid prior appropriation, and, being first in time, they are first in right, at least to that extent.

But, whether the defendants' diversion of water in excess of that amount was the diversion of water unappropriated at the time of the establishment of the Okanogan project in 1905, the complaint is silent. The complaint appears to have been framed upon the theory that the complainant should not assume the burden of proving what was unappropriated water of the Salmon river when it entered the field with its irrigation project; but that question should be shifted to the defendants to prove that all the water they diverted had been previously appropriated by them and applied to a beneficial use. We think that primarily the burden was on the complainant to allege and prove that the excess of water diverted by the defendants over 2½ acre feet was part of the unappropriated water of the Salmon river appropriated by the complainant. From this it would appear that it is a question whether the complaint states facts sufficient to constitute a cause of action; but in the court below no question was raised as to the sufficiency of the complaint. The answer of the defendants alleges that they had reason to believe and did believe that the complainant had appropriated or attempted to appropriate all of the unappropriated waters of the Salmon river, as alleged in the complaint, and they admitted that the complainant had constructed extensive works for the utilization of such waters; but by reason of lack of information and knowledge they denied, among other things, that the waters appropriated by the complainant had been devoted to beneficial uses in accordance with law; denied that the amount of water available from all sources of supply for the benefit of water right applicants in the Okanogan project during the year 1911 was found to be insufficient, and that there was a shortage of water during the latter portion of that irrigating season; denied that the defendants had but 50 acres of land susceptible of irrigation, and alleged that they had had 62.82 acres of land under irrigation from the waters of Salmon river for something like 25 years; denied that 2½ acre feet per acre of water was sufficient to irrigate the same; denied that they had at any time deprived the complainant of any water whatever to which it was entitled; denied that the defendants had ever used any water in excess of their actual needs; and denied that the complainant had suffered any damage by reason of any use of waters of the Salmon river by the defendants.

The case was tried upon the allegation of the complaint that the defendants' land did not require more than 2½ acre feet of water per acre for any one season and the allegation of the defendants' an-

swer that one miner's inch of water per acre was absolutely necessary and required for the successful growing of crops on defendants' land.

The issue as to the measurements of water must be reduced to equivalent terms to understand the testimony. The complainant contends that the defendants should be enjoined from diverting more than 2½ acre feet of water per acre of land irrigated by the defendants in any one season; that is to say, that the defendants should not be allowed to divert more water in a season than enough to cover the land 2½ feet deep. The defendants contend that they should be allowed to divert one miner's inch of water under six-inch pressure per acre during a season. This would require the diversion of 62.82 inches of water for the entire tract of 62.82 acres during the whole season. The equivalent terms, in government measurement, are: Forty inches of water under six-inch pressure is conceded to be in this case the equivalent of one cubic foot per second of time, and 62.82 miner's inches is the equivalent of 1.57 cubic feet of water per second of time, or 9.02 acre feet for 62.82 acres during a season of 5 months or 150 days. Measurement of Irrigation Water, United States Reclamation Service 1913.

The testimony on behalf of the complainant was directed mainly to the system of irrigation provided by the government project. From this testimony it appeared that complainant's contracts with the settlers under the project were of two classes: One class for those holding prior water rights for land coming under the system, and the other class for those whose water rights came into existence with the land when it was brought under irrigation by the system. These latter contracts were called subscription contracts. The first class of contracts called for 3 acre feet of water per acre for the season. The second class called for 2½ acre feet of water per acre for the season. There was testimony on behalf of the complainant tending to show that defendants' lands could be cultivated with the allowance of water in accordance with the government project. The testimony on behalf of the defendants tended to show that the diversion of water from the Salmon river for the defendants' land was through a canal constructed by the defendants' predecessors in interest in 1887. The canal had a carrying capacity of two cubic feet of water per second of time and diverted the water of the Salmon river about three miles above the point where the complainant afterwards established the diversion weir for its project. The defendants' land is therefore not under that project or its distributing system. The complaint against the defendants is that they are diverting more water per acre from the Salmon river for their lands than is being diverted by the complainant for the lands under its project. This complaint is answered by the testimony on behalf of the defendants tending to show that the complainant's canals are of modern construction and concrete lined, while the defendants' canal was constructed about 25 years ago upon a grade and alignment that permits considerable loss of water by seepage before it is delivered on the land. A further loss is chargeable to the fact that the canal is not concrete lined. This feature of the controversy is, however, not material now, since the decree has fixed the point of measurement for the water diverted by the defendants at the point of its

diversion from the river. Any loss of water that may occur hereafter in passing through defendants' canal to their lands must, under the decree, be sustained by them. This feature of the decree is materially in favor of the government. The testimony on the part of the defendants further answers that the complainant's project is for irrigation of land set with orchards and devoted to the production of fruits, while the defendants' lands are mainly in alfalfa, timothy, clover, grain, and vegetables; that the latter require more water than the former; that the defendants' land is underlaid with gravel and decomposed granite and is of a porous character and does not hold water as does the land under the complainant's project.

The court heard the testimony in open court and, after giving it careful and, as we think, fair consideration, entered a decree allowing the defendants 1½ cubic feet of water per second of time, or the equivalent of 7.02 acre feet for the season, to be measured at the point of diversion from the Salmon river; the irrigating season of each year to commence on April 15th and to end on September 15th. We have read the testimony carefully, and, although we find it conflicting, we are not disposed to disturb the decree. It is supported by the weight of the testimony and upon the whole is fair and just to all parties. We do not think the water allowed the defendants by the decree is in excess of what is required for such land according to the usual course of husbandry in which the defendants are engaged.

[2] When the defendants' predecessors in interest constructed the canal now owned by the defendants, and diverted water from the Salmon river for the irrigation of the land now owned by them, this, and the adjacent land, was the public land of the United States, and the appropriation of the water of Salmon river was under the act of Congress of July 26, 1866, c. 262, 14 Stat. 251. This act provides in section 9:

"That whenever, by priority of possession, rights to the use of water for mining, agriculture, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and decisions of the courts, the possessors and owners of such vested rights shall be maintained and protected in the same."

The only limitation placed upon the vested right in water appropriated under this statute is the use for which the appropriation is made. The water may not be wasted so as to prevent others from using it for legitimate purposes. The right to water must be exercised by the appropriator with reference to the general condition of the country and the necessities of the people and not so as to deprive a whole neighborhood or community of its use and vest an absolute monopoly in a single individual. Atchison v. Peterson, 20 Wall. 514, 22 L. Ed. 414; Basey v. Gallagher, 20 Wall. 682, 22 L. Ed. 452. But we know of no law requiring the appropriator of water to change his system of husbandry to conform to some other system where less water is required. In other words, we know of no law requiring the defendants in this case to cease diverting water for the irrigation of alfalfa or other forage crops heretofore grown on their land and compelling them to reduce their diversion to that required for an orchard or other use requiring less water; nor do we know of any law

requiring them to reduce their appropriation of water to the quantity required for a less gravelly and porous soil simply because there is a better soil in the neighborhood requiring less water. What is required of the appropriator is that he shall not waste the water appropriated but shall put it to a beneficial use in accordance with the requirements of the husbandry in which he is engaged. In our opinion the decree of the court below conforms to such requirements.

The decree is therefore affirmed.