[Civil No. 1799. Filed January 25, 1922.]

[203 Pac. 874.]

J. H. LARSON, Appellant, v. H. L. JOHNSON and J. B. COOK, Doing Business Under the Name and Style of "PITCHFORK CATTLE COMPANY"; J. H. KENNEDY and J. J. KENNEDY, Doing Business Under the Name and Style of "KENNEDY BROTHERS," and EUREKA SPRINGS LAND AND CATTLE COMPANY, a Corporation, Appellees.

WATERS AND WATERCOURSES — STATE COULD NOT USE WATER OF CREEK FLOWING THROUGH ITS LAND AS AGAINST PRIOR APPROPRIATORS.—The state of Arizona, on acquiring land from the United States government under Act Cong. August 13, 1912, did not acquire the right to use of water of creek flowing through land as against prior appropriators.

APPEAL from a judgment of the Superior Court of the County of Graham. G. W. Shute, Judge. Affirmed.

### STATEMENT OF FACTS.

This cause comes on appeal from Graham county; the contention being over the waters of Post Creek, the bed of which has water only intermittently, and the facts being:

That as early as 1872 military forces of our nation were camped at a place now called Fort Grant, the same now being the home of the State Industrial

School of this state, and for a period of thirty years there was maintained by the United States government a military post at the present site of said school; the Fort Grant Military Reservation, embracing 40,000 acres, having been, by order of the President, established in 1876 and abandoned in 1906. Post Creek has its source in the said reservation, and its course is southerly through the same. Fort Grant is near its course.

In about 1876, and after the establishment of the military reservation, lands outside of same were thrown open to settlement and entry under the public land laws. About the year 1885 the United States laid a pipe-line about five inches in diameter and for about three miles in length from a point on Post Creek to Fort Grant, for general purposes about the fort. In 1910 Congress passed an act known as "the Enabling Act" (36 Stat. 557), by the twenty-fifth section whereof there was granted to the proposed state of Arizona 100,000 acres of land for "state, charitable, penal, and reformatory institutions."

Arizona being admitted as a state February 14, 1912, Congress, by its Act of August 13, 1912, c. 286 (37 Stat. 302), provided that all lands, together with the improvements thereon, within that part of the former Fort Grant Military Reservation in the state of Arizona, situated and being outside of the boundaries of the Crook National Forest, be made subject to selection by the state of Arizona in partial satisfaction of the grant of 100,000 acres made to it for state, charitable, penal, and reformatory institutions, and by section 25 of the Enabling Act provided that selections shall be made within three years from the date of the act, and provided further that no more than 2,000 acres of such lands shall be selected; and on the tenth day of August, 1915, the state of Arizona made application for the selection of certain of

the lands in said abandoned Fort Grant Military Reservation, and thereafter, on the thirteenth day of August, 1915, and the fourth day of January, 1916, made amended applications for the selection of certain lands within said abandoned Fort Grant Military Reservation. That neither said original application for selection nor any of said amended applications for selection have ever been approved by the United States, nor has any patent been issued to the state therefor, or for any part thereof.

On or about the first day of January, 1913, the state entered into and took possession of the lands described in its application for selection, all of which were within the boundaries of the former Fort Grant Military Reservation, and outside of the Crook National Forest Reserve, and approximately 2,000 acres in extent, and the state thereupon established, and has ever since maintained thereon, the State Industrial School.

From the time of the abandonment of Fort Grant for military purposes in 1906 until 1913, when Arizona established the Industrial School thereon, caretakers appointed by the government irrigated small gardens upon the premises, but the irrigation of same was for their own personal use, and had nothing to do with their duties in caring for the property as directed by the government.

In 1876 Miles W. Wood entered upon the south half of the northwest quarter and the north half of the southwest quarter of section 11, township 10 south, range 23 east, of the Gila and Salt River base and meridian, the said land then being a part of the public domain and subject to entry, and lying and being outside of the boundaries of the Fort Grant Military Reservation, and upon his entry thereon he commenced cultivation of said land. He took from Post Creek the water necessary for the cultivation of said

land, and gradually brought the whole of his entry under cultivation by means of water so taken from said Post Creek, and by the year 1884 the whole of his said entry was under cultivation; and since that time the same has been kept under cultivation, and water for the irrigation of same has been taken from the said Post Creek, and no other source. That in due course a patent for said land was issued to the said Woods. That thereafter, and before the bringing of this action, Woods conveyed said lands, together with his water rights, to J. H. Kennedy and J. J. Kennedy, two of the appellees herein, and that the said grantees ever since have been, and now are, the owners and occupants of said premises, and have continuously cultivated the same by the use of water from the said Post Creek.

That in the year 1882 predecessors in interest of the appellees H. L. Johnson and J. B. Cook entered upon the northwest quarter of section 14, said township and range, took water for the irrigation of same out of said Post Creek, and commenced the cultivation of said lands. That ever since the year 1882, and even prior thereto, the said northwest quarter of section 14 has been continuously irrigated from waters taken from said Post Creek.

That about thirty years before the commencement of this suit the predecessors in interest of the appellee Eureka Springs Land & Cattle Company entered upon, for purposes of settlement and cultivation, lots 3, 4, 5, and the southeast quarter of the southeast quarter of section 3, the east half of the northeast quarter, and the northwest quarter of the northeast quarter of section 10, the fractional part of the southwest quarter of section 2, the north half of the northwest quarter, and lots 1, 4, 5, and the southeast quarter of section 11, also a fractional part of the southeast quarter of the southwest quarter of section

11, township 10 south, range 23 east, of the Gila and Salt River base and meridian; and at said time began the cultivation of said lands, and took water from the said Post Creek for the necessary irrigation of same. That the said lands have been continuously irrigated from said Post Creek since the date of original settlement.

That the lands herein described are arid and will not produce profitable crops without the application of water by irrigation. That the waters of Post Creek will not irrigate more lands than the lands of appellees herein described. That the pipe-line hereinbefore mentioned has, at all times since it was laid, been the means of the supply of water to Fort Grant, and now to the State Industrial School, for domestic purposes.

Mr. Wiley E. Jones, Attorney General, and Mr. Louis B. Whitney and Mr. Alexander B. Baker, Assistant Attorneys General, for Appellant.

Mr. John C. Gung'l and Messrs. Kibbey, Bennett & Jenckes, for Appellees.

STANFORD, Superior Judge (After Stating the Facts as Above).—We cannot vary from the settled law of Arizona on this subject. All law on the matter, however, will bear out the position of the appellees, they being the original appropriators of the water in question, but a condition that should be the law if the scene were laid in the New England states, for example, does not apply in the arid southwest, where, before the waters of a stream are claimed or usurped by anyone for purposes of irrigation, the stream is explored, a ditch dug, a dam built, the waters diverted and applied to lands, crops are grown and marketed, and not only a means of livelihood for the appropri-

ator is created, but the means of the support of many is established, whereby a man can see with a vision, as true as nature is certain, that he may depend upon the waters of a stream as a means of rearing a family, as for more than twenty years last past we have followed the rule in the Slosser case, 7 Ariz. 376, 65 Pac. 332, that the decisions of other states are not controlling as to questions relative to the appropriation of water. But the contention of the state of Arizona is that it acquired its right to use of the waters of Post Creek by reason of the transfer of its lands from the United States government. The state also claims the water by reason of adverse user and possession and by reason of prescription.

In the case of *Krell* v. *United States,* 79 Fed. 241, 24 C. C. A. 543, cited by appellees, which is a case having to do with the facts about as presented here, the lower court was by said decision reversed, because its decision was based on the idea that the government as the sovereign power has, in respect to the waters of non-navigable streams upon the public lands, a superior right to any which citizens can acquire; the decision of the appellate court in said case holding:

"His appropriation was, of course, subject to the prior appropriation and use of the waters of the stream made by the government officials for the purposes of the military reservation, which consisted of 640 acres of land, and was located on the stream in question below the point of the appellant's diversion. The military reservation was established by presidential proclamation in January, 1868, subsequent not only to the time when the government, by its conduct in recognizing and encouraging the local custom of appropriating the waters of the non-navigable streams upon the public lands for agricultural and other useful purposes, had become bound to recognize and protect the right so acquired, but subsequent, also, to the passage of the act of Congress of July 26, 1866,

making statutory recognition of that right, and confirming the holder in its continued use. The creation of the reservation for military post purposes did not destroy or in any way affect the doctrine of appropriation thus established by the government in respect to the waters of the non-navigable streams upon the public lands. They continued subject to appropriation for any useful purpose. The appropriation of a part of those waters for the uses of the military post secured it in the use of the portion so appropriated but it did not take from others the right to make such appropriation above the reservation as would not interfere with its prior appropriation.''

Under the rule that he who is first in time is first in right, the early appropriators, the appellees herein, have appropriated and beneficially used the waters since the early '70's. On the other hand, appellant has never used the waters except as hereinbefore referred to, and to no extent on a scale that would mean its appropriation and use for the irrigation of lands. *Arizona Copper Co., Ltd.*, v. *William Allen Gillespie*, 12 Ariz. 190, 100 Pac. 465.

At the time of the appropriation by appellees herein, or their predecessors, the waters of Post Creek were unappropriated, and since dates of appropriation the said waters have been continuously used for beneficial purposes in the irrigation of the premises herein described.

The judgment of the lower court is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.

McALISTER, J., being disqualified, did not sit in case.