Thomson, P. J.
The appellant brought this suit to restrain the appellee from discharging water from his ditch upon the land of appellant, to its injury, and to his damage otherwise. The facts are as follows: The land of the defendant lay principally to the southwest of the land of the plaintiff. The eastern line of the northernmost portion of defendant’s land was the western line of the southernmost portion of plaintiff’s land. The Dolores river flows in a southwesterly direction through both tracts of land, entering the northern portion of the plaintiff’s land from the east and continuing through the southern portion of the defendant’s land. The defendant was the owner of a ditch used for irrigating purposes, which took *340 its water from the Dolores river east of the eastern boundary of the plaintiff’s land, and ran southwesterly through the plaintiff’s northern tract, entering the land of the defendant across the common boundary line. Both parties pre-empted their lands under the homestead laws of the United States. Their several pre-emptions resulted in patents, that to the defendant having been issued on the 16th day of November, 1891, and that to the plaintiff, on the 28th day of June, 1894. The title granted to the plaintiff by his patent was subject to the defendant’s water rights.
In 1884, about three years after the defendant settled on his land, and four years before the plaintiff settled on his, the Dolores river changed its course, making a new channel for itself to the south, and returning to its original bed near the line which divided the lands of the plaintiff and defendant. The new channel left the old at a point some distance east of the plaintiff’s land, and east of the point where the ditch had tapped the river. The ditch was then extended eastwardly so as to reach the river above the point of departure. After the river’s change of course, no water flowed in the old channel; but it received a small amount by seepage, during high water, from the new river bed. This seepage caused the water to stand in certain low places, but elsewhere the former channel was dry. From the time of its abandonment by the river, the old channel received a gradual accretion of soil, and grass made its appearance where the water was not standing, some springing up spontaneously, and some from seed sown by the plaintiff. The old bed thus became useful for purposes of pasturage.
It was alleged in the amended complaint that the defendant had for some time past, and frequently, dammed up, and placed obstructions in, the ditch, *341 causing- the water thereof to overflow the plaintiff’s adjoining lands and the pasturage thereof, and greatly injuring- the same; that a private road of plaintiff across his land was obstructed by the overflow; that the injuries complained of were still continuing, and would, unless restrained, work irreparable damage to the plaintiff; and that he was without adequate legal remedy. The prayer was for an injunction restraining the commission of the acts complained of, and for damages.
The defendant answered that ever since the extension of the ditch after the change of the river’s channel, it had been necessary at times to turn a portion of the water taken from the river into the old channel; that he had made use of the old channel accordingly, but only so far as it was necessary, and that such use constituted the acts complained of.
At the trial, the evidence was that the defendant turned the water from the ditch into the old channel under a claim of right. His answer alleged that the use of the old river bed was necessary to him, without stating- in what the necessity consisted; but, in his testimony, he explained that his purpose was to regulate the flow in the ditch, and obtain water for his stock. He said that before the plaintiff settled on the land, whenever he had too much water, he turned it into the old channel; that afterwards, every year, he discharged more or less water into it, and every fall turned the water in for his stock.
The defendant now makes the point that the allegations of the complaint were not sufficient to call into exercise the equitable jurisdiction of the court, in that it nowhere alleged that the defendant threatened the continuance of the injurious acts; and in that it did hot show that the plaintiff was without an adequate legal remedy. There is a lack of precision in the complaint; but it undertakes to *342 state facts, which would, if well stated, constitute a good equitable cause of action. It alleged the frequent commission of acts injurious to the freehold, and the continuance of the injuries at the time suit was brought. A threat of continuance of those injuries may be implied from constant repetition of the acts. There was no -demurrer to the complaint; and no objection to it of any ldnd was taken below. Its statements were perhaps defective; but it is easy to see what was intended to be set forth. Respecting the effect of a failure to raise the question of insufficiency in the trial court, Chief Justice Hayt, in Black v. Bent, 20 Colo. 342, said: “Under these circumstances, if the facts alleged, with all reasonable deductions that can be drawn therefrom, are sufficient to show a cause of action, the complaint will be upheld upon review. ’ ’— See, also, Wilcox v. Jamieson, 20 Colo. 158. The plaintiff’s only remedy at law was an action for damages upon each recurrence'1 of the act; but the remedy afforded by an indefinite succession of lawsuits can hardly be regarded as adequate; and besides, the prevention of a multiplicity of suits is one of the grounds of jurisdiction in equity. But even if the defects in the complaint were more serious than they are, for the reason that the pleading was treated throughout the whole proceeding, and until this time, as sufficient, it is too late to bring it into question. — Nix v. Miller, 26 Colo. 203, 211.
But counsel say that the objections to the complaint could not have been successfully taken below, because its character was two-fold, combining a claim for damages with a demand for equitable relief, and that while bad as a bill for an injunction, it stated a good cause of action for at least nominal damages. Now, there is no allegation in the complaint that the plaintiff had sustained damage in any specific *343 sum. The pleading did state that by the acts of the defendant, he was injured, and the statement was necessary to enable him to secure the relief he sought; but, without more, it would not entitle him to a judgment for damages. The naked prayer for such damages gave no character to the complaint. Its character must be sought in its allegations; and, upon those, the only relief which could be allowed was equitable. It was a bill for an injunction, and nothing else.
The remaining question is whether the defendant-had acquired the right to make the use which he did of the old river bed. When the river abandoned its original course, the bed over which it formerly flowed became part of the surrounding land. At the time the change occurred the title was in the United States. By its patent, afterwards issued, the government conveyed the land to the plaintiff. The old bed was part of the land conveyed by the patent; and it devolved upon the defendant to show by what right he was discharging the water from his ditch upon ground belonging to his neighbor. Water from the Dolores river had been regularly and legally appropriated, and a ditch constructed to utilize the appropriation, which seems to have been amply sufficient for the purposes for which it was constructed. It passed through the plaintiff’s land, and he held the land subject to the easement. The right asserted is to divert water from this ditch and cause it to flow over another portion of plaintiff’s land. The defendant had used the ancient channel to- convey water before the issuance of the patent; but mere user, however long continued, could give no title as against the United States. Unless, before the patent, in pursuance -of law, an easement had been properly acquired, the title conveyed to- the plaintiff was not subject to the asserted right. After the conveyance, *344 the land could be burdened with a right of way for water only by the consent of the plaintiff, or by a proper legal proceeding. — Mills’ Ann. Stats., sec. 2260. It is not pretended that there ever was any such consent or proceeding.
The act of congress provides that whenever by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested or accrued, and are recognized by local customs, laws and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the'same; the right of way for the construction of ditches and canals for the purposes specified, is acknowledged and confessed ; and that all patents granted, and all pre-emptions or homesteads allowed, shall be subject to any vested or accrued water rights, or rights to ditches and reservoirs used in connection with such water rights. — U. S. Rev. Stats., secs. 2339-2340.
It was not contemplated by the foregoing provisions that the privilege of appropriating water, or the right to occupy outside land for the purpose of its conveyance to the land of the appropriator, should be unrestricted. The reason for the law was the necessity for the use of water upon the land which existed in the sections of country to which its provisions were intended to be applicable. Those sections, without the right to use water upon them, taken from the public domain, would have remained a wilderness. Where the water must be brought from a distance, unless the appropriator could convey it over the intervening land, the privilege would be useless. The rights recognized by the statute therefore spring from necessity; and the necessity is common to all the settlers in the neighborhood; so that in order that others may not suffer injury, the rights of the appropriator, both as to water and right of way, are limited *345 by bis needs. — Basey v. Gallagher, 20 Wall. 670; Crisman v. Heiderer, 5 Colo. 589. And it was upon the theory of necessity that the defendant’s answer was drawn. It averred that the use of the water, and of the old bed of the river for its conveyance, was necessary to him. In his testimony he said that such use was necessary for two purposes: first, to regulate the flow of water in his ditch, that is, when his ditch was running too full, to enable him to relieve it of the excess; and, second, to furnish water on his premises for his stock.
I. The statute requires every person diverting-water for purposes of irrigation from the public domain, to erect and maintain a headgate. — Mills ’ Ann. Stats., sec. 2293. Where the plaintiff’s headgate was,, oj- what was its condition, does not appear; but he testified that it could be so placed as to enable him to regulate the flow of water through the ditch. According- to himself, therefore, the construction and maintenance by him of a suitable headgate at the proper place, would render any discharge of water from the ditch upon the plaintiff’s land wholly unnecessary. He did not say so in words, but it seems clear from what he did say, that the reason why he forced upon his neighbor’s property the burden of carrying, off his surplus water, was simply and only to avoid the trouble of making, maintaining and using a proper headgate.
II. The Dolores river flowed through the defendant’s land. The point in the old channel where he watered his stock was only about one hundred and fifty yards from the river. He also had a well at his house which he used for watering stock. It abundantly appears that his own land furnished ample facilities for supplying his stock with water.
From his own statements the conclusion is irresistible that in turning his water upon the plaintiff’s *346 land, it was convenience merely, and not necessity at all, by wbicb be was influenced. No condition existed under wbicb a right to render worthless to the plaintiff any portion of bis property, could be acquired by the defendant.
The judgment will be reversed, and the cause remanded for further proceedings in conformity with this opinion. ’ Reversed.