227 P.2d 755

**HAMILTON et ux. v. McDANIEL et ux.**

**No. 5240.**

Supreme Court of Arizona.

Feb. 19, 1951.

W. H. Chester, of Phoenix, for appellants.

A. H. Mackenzie, of Prescott, for appellees.

STANFORD, Justice.

Action was brought in the superior court by plaintiffs, Fred McDaniel and his wife, appellees herein, for the purpose of quieting title in them to a portion of Lot 19, Block 2 of Mathers Subdivision, Amended, in the city of Phoenix, Arizona. The said Lot 19 measures approximately 150 feet east and west, 50 feet north and south and is the southwest corner lot of the said Block 2, bounded on the west by 13th Street, on the south by Diamond Street, on the east by Lot 13 and on the north by Lot 20.

Facts brought out at the trial indicate that plaintiffs purchased a portion of the said Lot 19 from Frank Randall by deed dated August 25, 1924, which described the land as: "The East fifty (50) feet of Lot numbered Nineteen (19) in Mathers Subdivision, Amended, a Subdivision of Block

number Two (2), of Mathers Subdivision, according to the official map or plat of said subdivision on file and of record in the office of the County Recorder of Maricopa County, Arizona in Book 9 of Maps, at page 9 thereof. * * *"

The trial court sitting without a jury, made findings of fact and conclusions of law. These findings disclose that there is an alley some 15 feet in width, which runs from Diamond Street northward, comprising the east 7½ feet of Lot 19, and the other lots in that tier as well as the west 7½ feet of Lot 13 and the remaining lots in that tier. Though the facts show that the said alley was, at the time of the purchase by plaintiffs, and still is, being used as a roadway by garbage trucks and for sundry other purposes, it has never been dedicated as such and in fact was only "curbed up" at the Diamond Street entrance in March of 1939. There is no showing of any such alleyway in the plat recorded in the office of the County Recorder, however testimony shows that light and telephone poles have been installed and in use along the alley since 1921, the poles being placed along the western edge of said alley.

At the time of the purchase of the "East 50 feet of Lot 19" by plaintiffs, the vendor Randall showed the plaintiff Fred McDaniel four iron stakes in place on the land which he stated marked the boundary of the tract being sold to them. The land enclosed by the iron stakes extended westerly for a distance of 50 feet, measured from the west side of the said alley and is the parcel of land actually taken possession of by plaintiffs. It will be noted that though described as the "East 50 feet of Lot 19" in the deed, this parcel of land was actually measured from the west side of the alley instead of from the east boundary of Lot 19, as determined by the map and plat thereof. Thereafter, in 1926, plaintiffs built a house on the tract and a picket fence along the boundaries as set out by the stakes on the east, north and west sides thereof.

In 1935, the defendants E. L. Hamilton and his wife, appellants herein, purchased the remaining portion of Lot 19 which was described in their deed as "Lot 19, * * * Except the East 50 feet thereof, * * *." and they thereupon took possession of that portion of Lot 19 lying west of the picket fence built by plaintiffs.

Thereafter, in January, 1948, defendants had their land surveyed, the survey indicating that the west boundary of the property possessed by plaintiffs was 7½ feet west of its true location if the description in the deed were taken literally. Defendant E. L. Hamilton thereupon removed the plaintiffs' west fence and constructed a fence running north and south across Lot 19 and immediately next to the the house on the McDaniel property, the west side of which extended some .92 of a foot over the boundary as found by the survey. The strip of land in question is the land lying

between the boundary established by plaintiffs along the west side of the parcel they took possession of and the west boundary line as determined by the survey of the defendants, being a strip some 7½ feet wide and extending across Lot 19 in a north-south direction.

Following the findings of fact and conclusions of law made by the lower court, judgment was rendered, quieting title in favor of the plaintiffs to said strip, and from the judgment of the lower court this appeal was taken.

Defendants present seven assignments of error, the first three of which question the sufficiency of the evidence to support the findings of fact, conclusions of law and the judgment of the lower court. These assignments will be considered together because of their similarity.

■ It is a rule too well-established in this jurisdiction to require, the citation of authority in support thereof, that this court will not weigh the evidence which was presented in the trial court to determine the correctness of its judgment. We will only examine the record before us to determine whether there is any substantial evidence to support same.

■ Upon close examination of the evidence before us, both oral and documentary, we are of the opinion that there is ample evidence in support of all the findings and conclusions of the lower court, as to plaintiffs' adverse possession of the property involved as well as proof of a sale by boundaries marked on the ground, and that the judgment rendered is in conformance with those findings.

Before discussing the remaining assignments, it will be well to stress that the evidence herein clearly shows, as brought out in the findings of the lower court, that plaintiffs exercised possession and control over the strip of land in question and used and enjoyed the same for more than a ten year period, to wit: from 1924 to the date of the survey, thus fulfilling the requirements of ownership through adverse possession in accordance with section 29–103, A.C.A.1939, and upon this ground alone plaintiffs would be entitled to judgment.

■ Assignment of Error No. 4 urges that the trial court erred in rendering a judgment which does not conform to the complaint in that the complaint describes the property possessed by the plaintiffs as "the East fifty (50) feet of Lot 19" whereas the land described in the judgment, supra, does not satisfy that description according to the plat of record.

Upon examination of all the evidence of record, it is noted that the exact boundaries of the property held by plaintiffs and the manner in which it was acquired, is made quite clear and certain. If taken literally, it may be contended however that there is a conflict between the description of that property as contained in the deed and the metes and bounds of the land actually possessed by the plaintiffs. The trial court

evidently took the view that the description contained a latent ambiguity and admitted evidence to clarify its true meaning.

Also, we feel it necessary to point out that when plaintiffs' grantor recognized the existence of the said alley along the east end of Lot 19, he in effect established the east boundary of said lot along the west edge of the alley, as a result of which the "East 50 feet" of said lot would conform to the description in the judgment. The trial court, as pointed out above, apparently considered the deed description as containing a latent ambiguity.

The defendants also own Lot 20 in the same subdivision which joins Lot 19 on the north, and it is significant that while the plat of record indicates that the eastern boundary of Lot 20 is but a continuation of the eastern boundary of Lot 19, the evidence shows that the defendants themselves have in fact recognized the existence and continued use of the said alley to the extent that they have possessed only that portion of Lot 20 running west from the edge of the alley and have constructed their fence at the east end of the said lot along the west side of the alley. Accordingly we hold that there are no justifiable grounds whatsoever for defendants to contend, as they do, that the limits of the land involved herein should be construed in strictest compliance with the plat of record in complete disregard of the existence and continued use of the 15-foot alleyway and the adjustments thereby made. It is to be

noted that the title to the strip used as an alleyway is not an issue in this case.

Assignment of Error No. 5 sets forth that the lower court erred in signing and rendering the judgment on the same day that the final written form thereof was lodged in the court and served on the parties. In support of this argument, defendants rely on Rule No. 8 of the Supplemental Rules of Court for the Superior Court of Maricopa County which provides that a formal written judgment "shall not be signed until the expiration of five (5) days after the proposed form thereof has been served," unless the opposing party shall have approved the same as to form. Counsel for appellants are apparently confused as to the date on which judgment was actually entered. The record shows that the case was tried on June 17, 1948, and the trial court by minute entry dated September 29, 1948, ordered that judgment be entered for plaintiffs *upon the presentation and approval of a written judgment and the payment of filing fee to the Clerk.* A proposed form of judgment was submitted by plaintiffs to the trial court in November of 1948, to which certain objections were made and thereafter counsel for the prevailing parties submitted proposed findings of fact, conclusions of law and another judgment. These documents met with the approval of the trial judge, Honorable M. T. Phelps, now a member of this court, and on the last day of his term— (December 31, 1948) he performed the ministerial act of signing same but it was

not until January 11, 1949, that the judgment was actually filed with the Clerk and recorded. On January 3, 1949, new objections to the form of judgment were filed and thereafter were overruled by Judge Bernstein, the then presiding judge. Unquestionably under section 21–1230, A.C.A. 1939, and our holding in Gillespie Land & Irrigation Co. v. Buckeye Irrigation Co., 69 Ariz. 367, 213 P.2d 902, and cases therein, judgment was not entered until January 11, 1949, and it appears to us that prior to this date counsel had twice exercised his right to object to the form of judgment. There is no merit to this assignment.

█ It is next contended that the court erred in granting plaintiffs' an attorney's fee because of their noncompliance with the statute prior to the commencement of the action. Section 27–1403, A.C.A.1939, contains the following: "* * * If a party, twenty (20) days prior to bringing action to quiet title to real property, request of the person holding an apparent adverse interest or right therein the execution of a quit claim deed thereto, and shall also tender to him five dollars ($5.00) for the execution and delivery of the deed, and if such person shall refuse or neglect to comply therewith, the filing of a disclaimer of interest or right shall not avoid the costs, and the court may allow the plaintiff in addition to the ordinary costs, an attorney's fee to be fixed by the court."

Defendants complain that the letter requesting the execution of an enclosed quit-claim deed which was sent by plaintiffs' attorney together with a tender of $5 was addressed only to defendant E. L. Hamilton and that no such request was ever made of Julius Hamilton, the other defendant herein. We are of the opinion that the defendant wife, Julius Hamilton, can justly complain that under the circumstances, an attorney's fee should not be adjudged against her individually. She was a joint record owner of the property in question, yet as to her no attempt was made to comply with the above quoted statute which is a condition precedent to the recovery of an attorney's fee. This holding however does not relieve the defendant husband, E. L. Hamilton, from being individually liable for the attorney's fee assessed against him by the trial court.

█ Finally, defendants object to the trial court's allowance of plaintiffs' cost bill upon the grounds that it was not filed within ten days of the entry of judgment as is required by section 34–127, A.C.A.1939. The record shows however that a statement of costs was filed simultaneously with the entry of judgment on January 11, 1949. Thereafter exceptions to the cost bill were filed by defendants and after a hearing was had the exceptions were overruled. This assignment is predicated upon a false premise due to counsel's failure to recognize the true date upon which judgment was entered. It is wholly without merit.

Except for the taxing of an attorney's fee against the defendant wife, the judg-

ment of the lower court is affirmed. Appellees to recover their costs.

Judgment affirmed as modified.

UDALL, C. J., DE CONCINI and LA PRADE, JJ., and LOCKWOOD, Superior Judge, concur.

Justice M. T. PHELPS being disqualified, the Honorable Lorna E. LOCKWOOD, Judge of the Superior Court of Maricopa County, was called to sit in his stead.