436 P.2d 582

**Harvey L. FRITTS and Ione Fritts, husband and wife, Appellants,**

**v.**

**A. G. ERICSON and Maude M. Ericson, husband and wife, Appellees.**

**No. 8610.**

Supreme Court of Arizona.

In Division.

Jan. 11, 1968.

Lawrence H. Doyle, Jr., and Otto H. Linsenmeyer, Phoenix, for appellants.

Tognoni & Pugh, Phoenix, for appellees.

UDALL, Vice Chief Justice:

In 1956 the appellants, hereinafter called plaintiffs, brought an action for ejectment in the Superior Court of Yavapai County against the appellees, hereinafter called defendants, for possession of certain land in Yavapai County, Arizona which they had acquired by deed from Western Motels, Inc. The defendants filed an answer and counterclaim in which they alleged that for more than ten years prior

to the assertion of any right, title or interest by the plaintiffs to the land described in the complaint, the defendants had been in peaceable and adverse possession of said lands, cultivating, using, and enjoying the same and paying taxes thereon, and claiming under title or color of title, and deed or deeds duly recorded. The case was tried to conclusion and judgment was rendered against the plaintiffs on their complaint and for defendants on their counterclaim.

On appeal to this Court the judgment was reversed with directions for more specific findings on the following points:

"1. What acts of the defendant are claimed to constitute 'an actual and visible appropriation' of plaintiff's lands (i. e., within the limited area described, supra) for the ten-year period?

"2. During which continuous ten-year period are such acts supposed to have occurred? What is the starting point of the claimed adverse possession?

"3. Within the particular area in question, what were the specific outside limits of plaintiff's titled lands adversely possessed by defendant?

"4. Did the 1948 lease from plaintiff's predecessor in interest to defendant Ericson covering the lands now in question, which ran for the period June 5, 1948 to June 5, 1949, occur during the ten-year period of defendant's claimed adverse possession, or was it subsequent thereto?" Fritts v. Ericson, 87 Ariz. 227, 234, 349 P.2d 1107, 1111 (1960).

Following the taking of additional testimony beginning February 6, 1964, the trial court again entered judgment for the defendants on both plaintiffs' complaint and on defendants' counterclaim, quieting title in the defendants to the following described lands:

"That portion of the East Half of the Southwest Quarter of Section 12, Township 14 North, Range 2 West of the Gila and Salt River Base and Meridian, Yavapai County, Arizona, being that portion of the tract hereafter described, lying North of the section line dividing Sections 12 and 13, as shown on the survey map of James B. Holmquist recorded in Book 6 of Maps at page 15 in the office of the Yavapai County Recorders, State of Arizona; said tract being described as follows:

"Beginning at an iron pipe in a lake, thence North 72 degrees 41 minutes East 135.44 feet, thence North 85 degrees 14 minutes East 121.30 feet to the Westerly right-of-way line of U. S. Highway 89; thence southerly along said right-of-way line 978.92 feet; thence North 51 degrees 39 minutes West 58.12 feet, thence North 0 degrees 22 minutes 20 seconds East 867.53 feet; to said iron pipe at the point of beginning. Said iron pipe in a lake is located as follows: Beginning at a brass cap which marks the East Quarter corner of Section 24, Township 14 North, Range 2 West; thence North 62 degrees 49 minutes 35 seconds West 5953.38 feet to the original stone at the Southwest corner of Section 13, Township 14 North, Range 2 West; thence North 0 degrees 01 seconds East 5268.70 feet to an iron pipe set in bedrock; thence North 89 degrees 33 minutes East 1378.24 feet to said iron pipe in a lake."

Findings of fact and conclusions of law were approved by the trial court.

On appeal, the plaintiffs raise numerous questions for review by this Court, the gist of which is that the evidence does not support the findings of fact, conclusions of law, and judgment entered by the trial court. In passing upon this claim, the only determination we must make is whether there is substantial evidence to support the trial court's judgment. Spillsbury v. School Dist. No. 19, 37 Ariz. 43, 288 P. 1027 (1930).

In a similar adverse possession case, this Court, in Hamilton v. McDaniel, 71 Ariz. 371, 227 P.2d 755 (1951), stated:

"It is a rule too well-established in this jurisdiction to require, the citation of authority in support thereof, that this

court will not weigh the evidence which was presented in the trial court to determine the correctness of its judgment. We will only examine the record before us to determine whether there is any substantial evidence to support same." 71 Ariz. at 374, 227 P.2d at 757.

The elements which must be proved to establish title by adverse possession are named by statute. The applicable sections are:

A.R.S. § 12–521:

"A.1: 'Adverse possession' means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

"A.2: 'Peaceable possession' means possession which is continuous, and not interrupted by an adverse action to recover the estate.

A.R.S. § 12–526, subsec. A:

"A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, shall commence an action therefor within ten years after the cause of action accrues, and not afterward."

■ The evidence shows that the defendants entered into an agreement to purchase a certain parcel of land on May 29, 1936. It was described as "[a]ll that portion of the Northeast Quarter of the Northwest Quarter (NE–¼ NW–¼) of Section Thirteen (13); Township Fourteen (14) North, Range Two (2) West, G. & S.R.B. & M., LYING WEST OF THE PRESCOTT–JEROME ROAD," and was referred to in the trial as the Ericson home tract. The land in dispute was referred to as the Del View tract and is an area which defendants erroneously believed was part of the Ericson home tract conveyed to them by deed. The mistake as to the boundaries of their deeded land was the result of not knowing the location on the ground of the government section lines. Rather they relied on land-marks pointed out to them by their predecessors in interest, LeRoy Anderson and wife, as determining the boundaries of the land conveyed to them.

The evidence clearly shows it was defendants' intention to occupy all of the land enclosed by the landmarks shown to them by Anderson. With reference to the Del View tract, Mr. Ericson testified that he "knew where his lines were," and that he "always owned it." The evidence further shows that one of plaintiffs' predecessors in interest, a Mr. Foster, accepted the fence lines as the north boundary of the Del View tract from the year of 1936, to the time of Foster's death in 1945. At no time did the defendants allow other parties to come on or use the Del View tract without permission after they took possession in June 1936.

The evidence shows that after the time defendants took possession of the Del View tract in 1936, they dammed a water course, constructed a fish pond for the raising of fish, maintained a vegetable garden, planted fruit trees, pastured cows and horses, built a pen for pigs, and constructed a taxidermist workshop building. Defendants also maintained stands of bees and constructed fences for the utilization of said tract of land. The evidence further shows that beginning in 1936 and '37, defendants cleared brush and trees and made preparations for building the Del View Motel and a trading-post; that in due course the motel was constructed and the building for the trading post was completed.

Defendants' real property tax statements described the land as it was conveyed to them by Anderson in 1936; however, after 1946, the improvements to the property were included with the real property tax assessments. Most of the buildings have been in continuous use since their construction.

■ It is contended that the topography of the Del View tract was so rough that nothing could "grow, walk or lie upon it, and therefore, that no one could possess it." We are not persuaded by this argu-

ment. Continuity of possession does not mean that the adverse possessor must occupy every square foot of the land every moment, rather it is sufficient that the use he makes of it be a use suitable to the nature of the land or the use an owner would make of his identical land. Powell, Real Property § 717.

In Spillsbury v. School Dist. No. 19, supra, we said:

"It is suggested that to establish title by adverse possession there must be an actual occupancy of the land, and such use of it as it is ordinarily adapted [sic] to. This court has held that neither actual occupancy nor cultivation nor residence is necessary to constitute actual possession, and that what acts may or may not constitute a possession are necessarily varied, and depend upon the circumstances of the case." 37 Ariz. at 48, 288 P. at 1029.

Similarly, in Martinez v. Mundy, 61 N.M. 87, 295 P.2d 209 (1956), the Supreme Court of New Mexico affirmed a trial court's judgment for the adverse possessor of land which was either fenced or bounded by a deep gorge, most of which could be used only for grazing cattle, and in Griswold v. Lagge, 132 Mont. 23, 313 P.2d 1013 (1957), the mere grazing of sheep during the grazing season on unfenced land not suitable for other purposes constituted adverse possession.

This Court, in reversing the first judgment, with directions for more specific findings of fact asked this question:

"Q Did the 1948 lease from plaintiff's predecessor in interest to defendant Ericson covering the lands now in question, which ran for the period June 5, 1948 to June 5, 1949, occur during the ten-year period of defendant's claimed adverse possession, or was it subsequent thereto?"

 It is claimed by the plaintiffs that when plaintiffs' predecessor in interest

leased the land in Section 12 to the defendants, which defendants now claim they have acquired by adverse possession, they admitted the title of the plaintiffs and cannot now state that they held adversely. The record shows, however, that the land defendants believed they leased was adjoining the Del View tract to its north and they so testified. They accepted the lease from plaintiffs' predecessors in interest under the impression that the old fence line was the actual boundary line on the north side rather than the boundary line between Sections 12 and 13.

That the lease did not act to break defendants' continuous adverse possession for the statutory period is supported by the further fact that the ten-year period necessary to perfect title was accomplished in June of 1946. The lease dated June 5, 1948 was therefore given to the defendants approximately two years after defendants' title had been perfected. In George v. Gist, 33 Ariz. 93, 263 P. 10 (1928), we adopted the following statement:

"The law is well settled that recognition of title in the former owner by one claiming adversely, after he has acquired a perfect title by adverse possession, will not divest him of title." 33 Ariz. at 98, 263 P. at 11.

An additional point which troubled this Court on the first appeal, and on which we directed that a finding be made, was the inaccuracy of the description of the land involved and the failure to tie it to government corners or known section lines. The metes and bounds description adapted by the court and set out in its decree on the rehearing below was related to a government section corner as follows: "Beginning at a brass cap which marks the East Quarter corner of Section 24, Township 14 North, Range 2 West; * * *" Not only was the description tied to a corner of the government public land survey,[1] but it delineates the specific outside limits of plaintiffs' titled lands adversely possessed by de-

---

1. The United States Government survey provides that a township—approximately six miles square—contain thirty-six square miles or sections. The sections

fendants, and its call could be easily followed by a competent surveyor.

We conclude that the four questions submitted by this Court for specific findings are fully answered and the results substantiated by the evidence introduced at the second hearing, and by the findings of fact and conclusions of law made and entered by the trial court.

The judgment is affirmed.

McFARLAND, C. J., and STRUCK-MEYER, J., concur.

are numbered consecutively beginning with number one in the northeast corner of the township and counting westerly six sections on the north side thereof; then with number seven south of section six counting back to the east side of the township, and so on back and forth through the township until the six rows of sections with six in each row are run off, ending in the southeast corner of the township with number thirty-six.

Each section is divided into quarters and the point on each section line where the two quarters meet is referred to as the quarter corner. Clark, Surveying and Boundaries §§ 82, 85–6, 89, 90 (3d ed. 1959). In the instant case, the sections involved—numbers twelve, thirteen, and twenty-four—line up one below the other, and the description to the land involved was tied to the East quarter corner of section twenty-four.