**Betty S. HUNTER, Plaintiff–Appellant and Cross–Appellee,**

v.

**Alana C. MANSELL, Defendant–Appellee and Cross–Appellant.**

No. 09CA0799.

Colorado Court of Appeals, Div. III.

March 4, 2010.

Boog & Cruser, P.C., Victor F. Boog, Lakewood, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Walsh Law, P.C., Thomas A. Walsh, Golden, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge ROY.

Betty S. Hunter (the owner) appeals the trial court's judgment denying mandatory injunctive relief requiring the removal of encroachments. Alana C. Mansell (the possessor) cross-appeals the trial court's conclusion that she is not the owner of the disputed property by adverse possession and that the encroachments constitute a continuing trespass. We affirm the grant of summary judgment on the possessor's adverse possession claim, reverse as to the equitable remedies ordered by the trial court, and remand for further proceedings consistent with the views expressed in this opinion.

The possessor purchased property adjacent to the owner's property in December 2001. However, in approximately 1974, the seller's husband constructed a metal shed that partially encroached onto the owner's property. At the time of her purchase, the possessor was informed of the encroachment. More specifically, the "Seller's Property Disclosure" form stated that a "small garage at [the] rear of [the] property encroaches over [the] property line." The possessor was also provided a boundary survey plat (Plat) dated September 16, 2001, which defined the boundaries of the seller's property, gave the

approximate size and location of the encroachment by the metal shed, and indicated a line of junipers and a "fence on a rock wall" on the owner's property. The possessor's deed from the seller did not include the area of encroachment. The possessor was again notified of the encroachment by the owner's attorney in December 2003. At that time, there was some informal discussion of the matter between the parties or their representatives, but no agreement was reached.

The metal shed is a three-car garage which is 30 feet wide and 20 feet deep (600 square feet) with double swinging doors for the center stall and overhead doors for the two side stalls. The shed encroaches about 14 feet onto the owner's property and the extent of the encroachment is about 190 square feet. The property line traverses the metal shed beginning at or near the right front corner, as the observer faces the front of the shed, ending about two-thirds the way down the back wall. Approximately two-thirds of the right stall and one-third of the center stall encroach. The metal shed is described on the plat as a "corrugated metal shed (no foundation)." At the time the possessor purchased her property, the metal shed was a silver corrugated metal building sitting in a grassy area. The possessor installed a concrete floor in 2006, a large concrete apron, and electricity, and the shed has been painted. There is testimony that structural and other improvements were also made.

The possessor's property is higher than the owner's property and the ground drops abruptly to a ditch or channel on the owner's property. A stone wall topped with a wire fence is generally along the upper edge of the abrupt drop and the property line until approximately 90 feet north and east of the shed, at which point it veers to the northwest into the owner's property. The fence and wall continue for another 90 feet and terminate 25 feet into the owner's property and north of the metal shed. A row of junipers generally parallels the wall and fence, between them and the property line.

The rock wall is apparently a retaining wall supporting the higher ground. The wall is rather substantial and organized at its northeast end, but it appears considerably less substantial and less organized in the vicinity of the metal shed. With the area of the fence and wall included, the total area of encroachment is approximately 1200 square feet as estimated by the possessor, with 190 square feet attributable to the shed and the balance to the high ground "behind" the wall and fence.

The owner filed a complaint on November 22, 2006, seeking a declaratory judgment that she is the fee simple owner of the disputed property and that the possessor has no right to it, and requesting a mandatory injunction requiring the removal of that portion of the shed which encroaches. The possessor filed a counterclaim alleging that she was the owner of the disputed property by adverse possession.

The owner filed a motion for partial summary judgment on the issue of the ownership of the disputed property. Attached to that motion was the owner's affidavit with exhibits. The owner, after reciting some historical facts, stated:

A corrugated metal shed straddles the west line of Block 10 [the common boundary], the original town of Morrison. . . .

The Metal Shed was constructed by [the seller's husband]. . . .

A few years after the Metal Shed was constructed, it was discovered from a land survey that the Metal Shed encroached on the [owner's] property.

Based upon an informal agreement between [the owner and her husband] and [the seller and her husband], the [owner] kindly permitted the Metal Shed to remain, as long as everyone understood that the Metal Shed encroached upon [the owner's] Property and that [the owner] reserved the right to require the shed to be removed upon the sale of [the seller's] property to a third party. Confirmation of such an informal agreement is evidence[d] by the sworn statement of [the seller], a copy of which is attached. . . .

Also attached to the motion is the seller's affidavit in which she states, in pertinent part:

In about 1974 [the seller's husband] constructed a small pole barn at the edge of

the large drainage ditch separating the Morrison Trout Ranch and our property. In those days property lines were somewhat informal and [the seller's husband] located the building based on his understanding that our property extended to the ditch.

A few years later we discovered from a land survey completed by [the owner] that the corner of the shed was encroaching on [the owner's] property. [The owner] kindly allowed the garage to remain as long as everyone understood that part of the building was standing on [the owner's] property.

Last year when I sold the ... property, the [possessor] was informed of the encroachment and the informal agreement between [the owner] and [the seller]. The buyer understood that since the property was changing hands there was a possibility [the owner] may ask that a portion of the building be demolished. Knowing this, the new owner[ ] [the possessor] proceeded with the closing.

The seller, the seller's husband, and the owner's husband are now all deceased. Both husbands died prior to the seller's transfer of her property to the possessor.

In response to the motion for partial summary judgment, the possessor filed a brief and exhibits. Included in the exhibits were: (1) the Seller's Property Disclosure issued in conjunction with the sale to the possessor; (2) the Contract to Buy and Sell Real Estate signed by the seller; (3) the Warranty Deed conveying the seller's property to the possessor; (4) a letter from the owner's attorney to the possessor pointing out the encroachment, alleging a license agreement, asking to reach an accommodation, and suggesting a sale of the encroachment to the possessor; and (5) the seller's affidavit.

The possessor (1) challenged the adequacy and completeness of the owner's affidavit to establish an agreement; (2) challenged the competency of the seller to execute her affidavit because of her advanced age and poor health; (3) argued the seller's affidavit contradicts representations made by the seller in the contracts and closing documents related to the sale; and (4) challenged the motivation for the seller's affidavit, based on the delay after the completion of the sale and its proximity in time to the owner's consulting with an attorney. The possessor concluded:

Based on the above-argument, whether an agreement between the [the owner] and [the seller] existed, and thus whether the property was adversely possessed, is most certainly not an undisputed fact. At worst, there is a very serious doubt as to whether an agreement ever actually existed. Summary Judgment is not proper if there is any doubt about the existence of a triable issue.

The trial court granted the owner's motion for partial summary judgment. It determined that prior to the sale, the seller had used and maintained the metal shed for a period of time in excess of that required to acquire ownership by adverse possession. It also concluded that the seller's recognition of the encroachment in her disclosures in the sale documents constituted a "disclaimer of any ownership or 'claim of right' in the disputed property, by confessing her shed's 'encroachment,' means the 18–year statutory period,—if it ever began—was interrupted (and indeed terminated) [contemporaneously] with the conveyance to [the possessor]."

The case then proceeded to trial on the owner's claim of trespass and her request for mandatory injunctive relief requiring the possessor to remove the metal shed. The trial court concluded that the possessor's use of the disputed property constituted a continuing trespass, denied the mandatory injunctive relief, and ordered the owner to lease the disputed property to the possessor indefinitely for one dollar a month commencing in 2001. The owner then filed a motion requesting that she be permitted to exercise self-help and remove the encroachments. The trial court ordered the parties to brief that issue and thereafter ordered that the encroached parcel be appraised and that the possessor be given 90 days to purchase the disputed tract from the owner at the appraised value. While not clearly stated, the order appears to accord the possessor the right to choose between paying rent for, or purchasing, the disputed property.

This appeal and cross-appeal followed.

## I. The Cross–Appeal

Because it is logical to do so, we first address the cross-appeal. The possessor argues the trial court erred in granting partial summary judgment because she is the rightful owner of the disputed property. More specifically, she argues that the trial court erred in determining her claim of adverse possession (1) was dependent on tacking her possession onto that of the seller; (2) was defeated by the seller's acknowledgment, at the time of transfer, that the disputed property was an encroachment; and (3) failed because the deed conveying her property to her did not include the disputed property within the legal description. We affirm the grant of summary judgment on grounds different from those relied upon by the trial court.

### A. Standard of Review— Summary Judgment

We review a grant of summary judgment de novo. *Brodeur v. American Home Assurance Co.,* 169 P.3d 139, 146 (Colo.2007).

Summary judgment is appropriate only when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Brodeur,* 169 P.3d at 146. The moving party has the burden of clearly demonstrating the absence of a genuine issue of fact. *Primock v. Hamilton,* 168 Colo. 524, 528, 452 P.2d 375, 378 (1969). However, on appeal, the moving party may abandon the trial court's rationale and assert an alternative theory, supported by the record, to affirm the judgment. *See Serna v. Kingston Enterprises,* 72 P.3d 376, 380 (Colo. App.2002).

In evaluating a motion for summary judgment, the nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts; all doubts must be resolved against the moving party. *In re Tonko,* 154 P.3d 397, 402 (Colo.2007). The nonmoving party must show that there is a genuine issue of material fact with admissible evidence and cannot rely on either pleadings or argument alone. *Smith v. Mehaffy,* 30 P.3d 727 (Colo.App.2000); *Bauer v.*

*Southwest Denver Mental Health Ctr., Inc.,* 701 P.2d 114 (Colo.App.1985). The court does not weigh the credibility of witnesses at the summary judgment stage. *Crouse v. City of Colorado Springs,* 766 P.2d 655, 661 (Colo.1988); *Travers v. Rainey,* 888 P.2d 372, 374 (Colo.App.1994).

### B. Adverse Possession

■ Adverse possession, codified in section 38–41–101, C.R.S.2009, requires that the party's possession of the disputed property has been actual, adverse, hostile, under a claim of right, exclusive, and uninterrupted for at least the statutory period of eighteen years. *Smith v. Hayden,* 772 P.2d 47 (Colo. 1989).

### C. The Trial Court's Ruling

■ The trial court found that the seller had possessed or occupied the disputed property in excess of eighteen years, but it concluded that the seller's disclosure of the encroachment to the possessor at the time of the sale interrupted the adverse possession period, if it ever commenced. The trial court relied on *Segelke v. Atkins,* 144 Colo. 558, 560, 357 P.2d 636, 638 (1960). In that case, the possessor initially entered as a lessee, but remained for the statutory period following the expiration of the lease. The court held that when occupancy is, or becomes, permissive, the possessor must give a notice or explicit disclaimer to the owner before adversity commences:

> Where an occupant of land acknowledges or recognizes the title of the owner during the period of his claimed adverse possession, he fatally interrupts the continuity of his adverse possession and the statute of limitations does not begin to run in his favor until he repudiates the owner's title.

*Id.*

Here, the trial court stated, "[T]he seller's disclaimer of any ownership or 'claim of right' to the disputed strip of property, by confessing her shed's encroachment, means that the 18–year statutory period—if it ever began—was interrupted (and indeed terminated) contemporarily [sic] with the conveyance to [the possessor]." Therefore, the trial

court concluded the possessor had not established the five factors of adverse possession for the requisite time.

■■ The problem with this analysis and conclusion is that disclaimers are effective as a means of terminating adverse possession only if the statutory period has not already expired. Upon expiration of the statutory period, ownership vests in the person adversely possessing and it can be transferred only by deed, not by a disclaimer. *See Doty v. Chalk,* 632 P.2d 644, 645–46 (Colo.App. 1981).

In *Doty,* the plaintiff's first predecessor in interest occupied and used the disputed property for a period in excess of the statutory period, and then sold it to plaintiff's second predecessor in interest. During negotiations for a later sale of the adjacent and encroached-upon property to the defendants, the problem was discovered, and the defendants obtained a disclaimer from the first predecessor in interest, which the defendants relied upon for title to the disputed property. A division of this court rejected the disclaimer, stating:

> [W]e do not agree with defendants' contention that the disclaimer signed by Mrs. Thomas [the first predecessor] prior to her execution of the quitclaim deed to plaintiff divested her of title to the property.

> Title to property acquired by adverse possession matures into an absolute fee interest after the statutory prescriptive period has expired. Section 38–41–101, C.R.S. 1973; *Spring Valley Estates, Inc. v. Cunningham,* [181 Colo. 435, 510 P.2d 336 (1973)]. Transfer of the property may only be effected by a validly executed deed, by adverse possession, or by other legal means. *McCain v. Cook,* 184 Neb. 147, 165 N.W.2d 734 (1969). Here, no claim is made on appeal that the disclaimer was, in effect, a quitclaim deed. And, there are no words of conveyance in the disclaimer that would make it a deed. *See* § 38–30–113 and § 38–30–116, C.R.S.1973. Moreover, such title cannot be divested by a cessation of occupancy or by the acknowledgment of title in the former owner. *Crawford v. French,* [633 P.2d 524 (Colo.App.1981)];

*McCain v. Cook, supra; see also Fritts v. Ericson,* 103 Ariz. 33, 436 P.2d 582 (1968).

Hence, since title to the disputed property vested in Mrs. Thomas long before the disclaimer was executed here, such disclaimer had no legal effect. *See Crawford v. French, supra; McCain v. Cook, supra.*

*Doty,* 632 P.2d at 645–46; *see also Spring Valley Estates, Inc. v. Cunningham,* 181 Colo. 435, 438, 510 P.2d 336, 338 (1973); *Welsch v. Smith,* 113 P.3d 1284, 1288 (Colo. App.2005). Indeed, the possessor raised this very point during the remedy trial, arguing that the owner lacked standing.

Therefore, in our view, the trial court's ruling cannot be affirmed on that basis.

### D. The Owner's Theory

■ The owner's theory, which formed the express basis for the motion for summary judgment, was that, while the seller's occupancy of the disputed property may have been initially hostile, it became permissive upon the entry of the agreement described in the owner's and the seller's affidavits. *See generally Smith,* 772 P.2d at 55–57. Indeed, the owner's theory here is a variation on the *Segelke* theme. In that case, the initial occupancy was permissive under a lease and became adverse following the expiration of the lease. 144 Colo. at 560, 357 P.2d at 638. Here, the initial occupancy, while hostile at first, became permissive upon the agreement of the parties prior to the expiration of the statutory period.

■ Hostile intent is based on the intention of the possessor to claim exclusive ownership of the property occupied. *Schuler v. Oldervik,* 143 P.3d 1197, 1202 (Colo.App. 2006). Therefore, to maintain adversity, the use cannot be with permission during the prescriptive period. *McIntyre v. Board of County Comm'rs,* 86 P.3d 402, 418 (Colo. 2004) (citing *Black's Law Dictionary* 53 (6th ed.1990)). Permissive possession by someone other than the true owner will not start the running of the statute of limitations and, thus, if the adverse claimant recognizes title in the owner, the period of limitation will stop running. 10 David A. Thomas, *Thomp-*

*son on Real Property* § 87. 10, at 138 (2d ed.2009).

Here, the owner argued that there is no factual dispute that she granted the seller permission to encroach upon the disputed land. She supports this with both her and the seller's affidavits. The trial court did not address this argument.

On appeal, the possessor disputes both the existence and the validity of any agreement, noting the contents of the seller's disclosure documents contradict her statement concerning an agreement in that: (1) the seller's "Real Property Disclosure" alerted the possessor of encroachment but not an agreement for permissive use; (2) the seller's "Affidavit and Indemnity" affirmed that there were no unrecorded contracts, leases, easements, or other agreements or interests relating to the premises under contract; (3) the "Contract to Buy and Sell Real Estate" required disclosure of all easements, liens, or other title matters not shown in the public record as to the premises under contract; and (4) the "Warranty Deed" required the seller to affirm she was conveying the property "free and clear from all former and other grants, bargains, liens, taxes, assessments, encumbrances, and restrictions." In our view, the four representations made by the seller in the transaction documents do not contradict her affidavit as they address only the property subject to the contract, and not the disputed area that was not part of the contract.

■■■ The possessor also alludes to issues of the seller's motive in giving the affidavit; her capacity to give an affidavit; and, for lack of a better term, any undue influence that might have been brought to bear on the seller to give an affidavit. However, no affidavit or other admissible evidence from a caregiver, family member, treating physician, friend, or other person raising any of these concerns was attached to the possessor's response to the motion for summary judgment. Every person, including the seller here, with personal knowledge about which he or she testifies is competent to be a witness. *Amber Properties, Ltd. v. Howard Elec. & Mech. Co.*, 775 P.2d 43, 45 (Colo.App.1988). "A 'genuine issue' [of material fact] cannot be raised by counsel simply by means of argument...." *Sullivan v. Davis*, 172 Colo. 490, 495, 474 P.2d 218, 221 (1970). Therefore, no material dispute as to the fact that the owner granted the seller permission to maintain the shed on the owner's land has been shown here.

Therefore, though we differ with the trial court's analysis, we conclude that summary judgment rejecting the possessor's claim of adverse possession is appropriate on this record.

## II. Direct Appeal—Remedies

■■ The owner appeals the trial court's remedy for the possessor's continuing trespass, that is, denying mandatory injunctive relief and fashioning other equitable remedies giving the possessor the choice of leasing the disputed property indefinitely under undefined terms for one dollar a month or purchasing the disputed property for an appraised value.

At the conclusion of the trial on remedies, the court found that (1) the metal shed and certain other improvements that encroached onto the owner's property constituted a continuing trespass; (2) the mandatory relief sought by the owner was an extraordinary remedy to be entered only where monetary damages are incapable of compensating the injured party; and (3) the owner presented no evidence of actual monetary damages. Therefore, the trial court entered an order requiring the owner to lease the disputed property for a nominal rent.

The parties then briefed the issue of the owner's right to utilize self-help to remove the encroachments. The trial court found that (1) the total area of encroachment is approximately 1200 square feet; (2) the possessor knew, or at least was advised, that the metal shed encroached on the owner's property prior to closing on the purchase of her property; (3) the possessor made improvements, including a concrete pad within the metal shed, after the closing; (4) a recent estimate for removal of the shed was $9,000 or more; (5) the possessor was engaging in a continuing trespass; (6) the possessor was not acting in bad faith or with malice; (7)

there had been no payments between the owner and the seller; (8) the encroachment had been permitted for a long period of time; and (9) the encroachments did not pose a safety hazard and were not otherwise injurious to the owner. The trial court concluded that the cost of removal of the encroachments would exceed any damages suffered by the owner.

The trial court then adopted an optional remedy based on the rationale and holding in *Mannillo v. Gorski*, 54 N.J. 378, 255 A.2d 258 (1969), that "the encroached parcel be appraised and, if necessary surveyed, and that [the possessor] be given 90 days after appraisal in which to purchase the disputed tract from [the owner] for cash."

 From the outset, the owner sought mandatory injunctive relief requiring the removal of the encroachments. The entry or denial of injunctive relief is a discretionary decision of the trial court that will not be disturbed on appeal absent an abuse of that discretion. *Rocky Mountain Animal Defense v. Colorado Div. of Wildlife*, 100 P.3d 508, 518 (Colo.App.2004). Therefore, we will reverse only if a trial court's decision is based on an erroneous application of the law, or is otherwise manifestly arbitrary, unreasonable, or unfair. *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 840 (Colo.App.2007). A court in equity has considerable discretion in fashioning a decree that achieves a fair result under the particular circumstances of the case. *Fed. Deposit Ins. Corp. v. Mars*, 821 P.2d 826, 831 (Colo.App.1991).

One noted treatise, 1 Dan B. Dobbs, *Law of Remedies* 816 (2d ed.1993), addresses considerations in determining whether it is more appropriate to grant damages or a mandatory injunction for the removal of an encroaching structure. It posits guiding principles, or policies: (1) no one should be permitted to take land of another merely because he or she is willing to pay the market price, as that would amount to private condemnation; and (2) while private condemnation cannot be sanctioned, neither can extortion or economic waste, and, therefore, conscionability and economic arguments may disfavor a mandatory injunction. *Id.* The treatise goes on to state:

If the total cost of removal of the encroachment, including the loss in value of the [possessor's] remaining building, was *very high* in comparison to the harm done to the plaintiff because the building encroached on his property, that disparity in economic consequences would be a *significant* factor in determining whether to issue the injunction.

. . . .

[However, [t]he injunction is not to be withheld merely because to remove the structure will be inconvenient or even because it will be *costly*. Rather, the injunction is to be withheld only when the hardship to the [possessor] *is not only great but disproportionate compared with the hardship or loss of rights the plaintiff would suffer if the structure is allowed to remain.*

*Id.* at 817–18 (emphasis added).

We start our analysis with the observation that our supreme court has defined a continuing trespass. *See Hoery v. United States*, 64 P.3d 214, 217–18 (Colo.2003). In *Hoery*, the court stated:

[I]n cases, for example, when the defendant erects a structure or places something on or underneath the plaintiff's land, the defendant's invasion continues if he fails to stop the invasion and to remove the harmful condition. In such a case, there is a continuing tort so long as the offending object remains and continues to cause the plaintiff harm. *See* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 13 (5th ed.1984).

In the context of trespass, an actor's failure to remove a thing tortiously placed on another's land is considered a "continuing trespass" for the entire time during which the thing is wrongfully on the land. Restatement (Second) of Torts § 161 cmt. b. Until the thing tortiously placed on the land, or underneath the land, is removed, then liability for trespass remains. *See* 75 Amer. Jur.2d *Trespass* § 26 (2002).

. . . .

For continuing intrusions . . . each repetition or continuance amounts to another wrong, giving rise to a new cause of action.

*See* Fowler V. Harper et al., *The Law of Torts* § 1.7 (3d ed.1996).

*Id.* at 218.

 Therefore, if, as here, the trespass is continuing, the owner's only remedy at law would involve a multiplicity of suits for each recurrence of the trespass. This remedy at law is inadequate and where further trespasses of the same kind are threatened, an injunction will lie. *Koch v. Story,* 47 Colo. 335, 344–45, 107 P. 1093, 1097 (1910); *Boglino v. Giorgetta,* 20 Colo.App. 338, 342, 78 P. 612, 614 (1904); *see also Mars,* 821 P.2d at 829 (citing Restatement (Second) of Torts § 160 (1965) for the proposition that after consent is withdrawn, the structures must be removed within reasonable time because continued occupation of the land by the structures is a trespass).

*Dobbs* cites, and the trial court relied upon, *Golden Press, Inc. v. Rylands,* 124 Colo. 122, 126–27, 235 P.2d 592, 594–95 (1951), in its analysis of whether to grant a mandatory injunction. In that case, the defendant constructed a one-story brick and cinder block printing plant which included a 160–foot exterior wall along a property line shared with the plaintiff. The footing for that wall extended across the property line by an overall average of two inches, at a depth of seven feet below the surface. The trial court issued a mandatory injunction, but our supreme court reversed, leaving the plaintiff without any remedy because the harm was de minimis. The court stated:

> Ordinarily, [a] mandatory injunction will issue to compel removal of encroaching structures, but it is not to be issued as a matter of course. On appeal to the court for an equitable remedy, the court must consider the peculiar equities of the case. A study of many decisions discloses no specific and universally-accepted rule as to encroachments.... Sometimes a slight and harmless encroachment is held to be within the rule "de minimis," ... and generally the courts require that he who seeks equity should do equity and come with clean hands.
>
> Where the encroachment is deliberate and constitutes a willful and intentional taking of another's land, equity may well require

its restoration regardless of the expense of removal as compared with damage suffered therefrom; but where the encroachment was in good faith, we think the court should weigh the circumstances so that it shall not act oppressively.... While the mere balance of convenience is not the proper test, yet relative hardship may properly be considered and the court should not become a party to extortion. Where defendant's encroachment is unintentional and slight, plaintiff's use not affected and his damage small and fairly compensable, while the cost of removal is so great as to cause grave hardship or otherwise make its removal unconscionable, mandatory injunction may properly be denied and plaintiff relegated to compensation in damages....

. . . .

Further, we note that the encroachment here complained of is very slight.... [The footings] constitute no interference whatever with plaintiffs' present use of the property....

The testimony indicates that the value of plaintiffs' lands is approximately $200 per front foot, so that if defendant had taken the entire strip of three and a half inches both at and below the surface, its value would have been only about $55, and the value of the portions extending from seven to nine feet below the surface and only along the rear eighty feet of wall would appear to be very small. Plaintiffs, at the trial, refused defendant permission to enter upon their property for the purpose of chipping off the encroaching footings with a jack hammer, and demanded that they be removed from defendant's side of the land, if necessary by tearing down the wall. The expense and hardship of such removal would be so great in comparison with any advantage of plaintiffs to be gained thereby that we think it would be unconscionable to require it, and that under all the circumstances disclosed mandatory injunction should have been denied by the trial court, with permission for plaintiffs to proceed, if desired, in damages.

*Id.* at 125–29, 235 P.2d at 594–96 (citations omitted).

■ In our view, the denial of a mandatory injunction and award of damages in *Golden Press* presents an extreme case, especially in that the plaintiff refused to let the defendant on his land to remove the encroachment. The overwhelming majority of case law in this jurisdiction demonstrates that the traditional and preferred equitable remedy for a continuing trespass is a mandatory injunction requiring the removal of the encroachment. In our view, *Golden Press* does not change that.

In *Steiger v. Burroughs*, 878 P.2d 131, 136 (Colo.App.1994), the testatrix, with consent, constructed a home on the defendant's land. There was evidence that the testatrix knew that the home would have to be removed on her death. Her estate sought an order requiring the defendant to sell the land occupied by the house to the estate. The trial court entered a mandatory injunction requiring the removal of the home and a division of this court affirmed.

In *Cobai v. Young*, 679 P.2d 121 (Colo.App. 1984), snow and other materials from the defendant's roof fell on the plaintiff's home in a community where the annual snowfall was 300 to 500 inches. The falling snow striking the plaintiff's home caused thunderous noise, jarring, nonstructural damage, and potential future structural damage. The trial court issued a mandatory injunction prohibiting the defendant from allowing the snow and other materials to slide so as to strike or impact the plaintiff's home. Concluding that the trespass was a continuing trespass, a division of this court opined that the only other remedy was a multiplicity of suits, and it affirmed.

In *Docheff v. City of Broomfield*, 623 P.2d 69, 71 (Colo.App.1980), public streets in a new subdivision collected drainage water and deposited it on the plaintiff's farmland, damaging both the land and, in season, crops. The trial court enjoined the city from discharging the drainage water on the basis that it constituted a public nuisance. A division of this court affirmed, not on the basis of public nuisance, but on continuing trespass; and again because a remedy at law required a multiplicity of lawsuits, it concluded that an injunction should issue. *See also Koch*, 47 Colo. at 344–45, 107 P. at 1097 (defendant installed pipes which drained plaintiff's reservoir and were a continuing trespass causing irreparable damage; injunction was the appropriate remedy); *Boglino*, 20 Colo.App. at 342, 78 P. at 614 (defendant for his own convenience discharged irrigation ditch water into a dry river bed on plaintiff's land).

In issuing a mandatory injunction requiring the owner to sell the disputed parcel to the possessor for the appraised value, the trial court relied upon *Mannillo v. Gorski*. There, the adjacent residential properties were in an urban setting and were 25 by 100 feet. One property owner installed concrete steps and a sidewalk, which encroached on the neighbor's property by 15 inches for the statutory period. The court concluded that an inadvertent or accidental encroachment, which was open and notorious, could ripen into title by adverse possession and remanded for a determination of whether the neighbor was aware of the encroachment, thereby making it open and notorious. The court stated:

Accordingly we hereby hold that no presumption of knowledge arises from a minor encroachment along a common boundary. In such a case, only where the true owner has actual knowledge thereof may it be said that the possession is open and notorious.

It is conceivable that the application of the foregoing rule may in some cases result in undue hardship to the adverse possessor who under an innocent and mistaken belief of title has undertaken an extensive improvement which to some extent encroaches on an adjoining property. In that event the situation falls within the category of those cases [in which] ... equity may furnish relief. Then, if the innocent trespasser of a small portion of land adjoining a boundary line cannot without great expense remove or eliminate the encroachment, or such removal or elimination is impractical or could be accomplished only with great hardship, the true owner may be forced to convey the land so occupied upon payment of the fair value thereof without regard to whether the true owner had notice of the encroachment at its inception. Of course, such a result should

eventuate only under appropriate circumstances and where no serious damage would be done to the remaining land as, for instance, by rendering the balance of the parcel unusable or no longer capable of being built upon by reason of zoning or other restrictions.

54 N.J. at 389, 255 A.2d at 264 (citations omitted). We are not persuaded by, and decline to follow, *Mannillo v. Gorski.*

While we recognize that in *Golden Press,* our supreme court limited the remedy for the trespass there to damages, we can find no authority in Colorado which imposes a mandatory injunction on a property owner to sell a portion of his or her property to a private party trespasser for its appraised value. We are reluctant to initiate a line of authority to that effect. In addition, in our view, this case is clearly distinguishable in that the disputed property in *Golden Press* was so small that cost of the removal of the offending structure so great that a mandatory injunction requiring removal would be inappropriate if not unconscionable.

Taking this all into consideration, in our view, the trial court abused its discretion on several levels.

First, in balancing the equities, the trial court apparently included some improvements to the metal shed that were installed by the possessor after she knew the shed encroached, after she had received a letter from the owner's attorney, and perhaps after the trial court had granted the owner a partial summary judgment in determining the cost of the removal of the shed value. While the trial court concluded the possessor did not act in bad faith or with malice, it did not find that she acted innocently or in good faith. We can see no reason to accord her an advantage in a balancing test by including the cost of removal of improvements which were made after the possessor knew the metal shed encroached. In addition, the possessor's testimony was not that it would cost approximately $9,000 to "remove" the metal shed; it was, instead, that it would cost that amount to "move" the metal shed, which, presumably, includes its reconstruction on the possessor's property.

Second, the metal shed encroaches approximately 190 square feet, yet the trial court granted the possessor the right to the continued use, or purchase, of approximately 1200 square feet of the owner's property. The additional approximate 1000 square feet extend from the property line to the wire fence and stone wall for which the cost of removal was apparently not estimated and which, presumably neither party would choose to remove because of its utilitarian purposes. Importantly, there is no evidence in the record that the wall, fence, or junipers were installed or planted by the possessor's predecessors in interest, or for the use and benefit of the possessor's property, or for the use of the metal shed. The possessor testified that, despite numerous disclosures to the contrary, she thought she was buying up to the wall or fence and that she wanted the trees to remain for privacy, security, and aesthetic reasons, and to prevent erosion. These uses or benefits do not, in our view, constitute any basis for compelling the owner to rent or convey approximately 1000 square feet of her property to the possessor. The trial court abuses its discretion in attempting to redraw the property line between the properties to a more logical location based on the terrain, which it expressly stated it was attempting, or to accommodate the possessor's comfort or convenience.

Third, the trial court determined that the cost of removing the shed exceeded any damages suffered by the owner and would, therefore, constitute waste. However, it did not find that the cost would be *"not only great but disproportionate compared with the hardship or loss of rights the plaintiff would suffer if the structure is allowed to remain disproportionate,"* as suggested by the treatise, 1 Dobbs, at 816 (emphasis added); or *"so great as to cause grave hardship or otherwise make its removal unconscionable,"* the standard announced by *Golden Press,* 124 Colo. at 126, 235 P.2d at 595 (emphasis added); or *"cannot without great expense remove or eliminate the encroachment, or such removal or elimination is impractical or could be accomplished only with great hardship,"* as stated in *Mannillo v. Gorski,* 54 N.J. at 389, 255 A.2d at 264.

Fourth, the trial court awarded the possessor a perpetual leasehold interest in the disputed property without providing even the barest terms, including a definition of breach; the remedies available upon breach; whether the interest leased is personal to the possessor and cotenant or, in some manner, runs with the possessor's property; insurance requirements; and, perhaps most importantly, the use to which the disputed property can be placed during the lease, including limitations on the expansion or maintenance of the existing, or the construction of additional, improvements. In our view, the trial court simply is not in a position to draft and impose a contract, much less a comprehensive contract, on the parties. In addition, of course, the absence of sufficient terms would create a significant likelihood of future litigation.

In our view, the cost of removal of the shed from the disputed parcel is not "so disproportionate" or, more important, "so great as to cause grave hardship on the possessor or otherwise make its removal unconscionable" within the meaning of *Golden Press*. A conclusion, as made by the trial court, that the removal would constitute waste does not suffice. Our conclusion is bolstered if the cost of removal excludes removing the recent improvements installed in the shed by the possessor, and its reconstruction. To the extent, if any, the court's remedy would impact future conduct, here it would encourage trespass, by entrenching that trespass.

The cost of the removal of the shed, when compared to the cost of removing an entire residence or redesigning and expanding a municipal surface water drainage system, are certainly not great or unconscionable. And while the trial court found that the possessor did not act in bad faith or with malice, it did not find she acted in good faith and innocently as contemplated by *Mannillo*.

Therefore, we affirm the grant of summary judgment on the possessor's adverse possession claim; reverse the remedies imposed by the trial court for the possessor's trespass;

and remand for the entry of a mandatory injunction requiring the removal of the portion of the metal shed that encroaches on owner's property, and for determination of the reasonable amount of time within which to do so. *See Steiger*, 878 P.2d at 136.

DAILEY and CRISWELL *, JJ., concur.